NO. 07-02-0280-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL E

FEBRUARY 21, 2003

_____

DEANA LOWERY,

Appellant

v.

THE STATE OF TEXAS,

Appellee

_____

FROM THE 217TH DISTRICT COURT OF ANGELINA COUNTY;

NO. 22,918; HON. DAVID V. WILSON, PRESIDING

_____

Before JOHNSON, C.J., QUINN, J., and BOYD, S.J.[1]

Through one issue, appellant Deana Lowery contends that the trial court erred in overruling her motion to suppress evidence obtained pursuant to the execution of a search warrant. She was allegedly entitled to have the evidence suppressed because the affidavit tendered to convince the neutral magistrate to issue the warrant failed to establish probable cause to conclude that the contraband sought was probably at the location to be searched. We agree and reverse the judgment.

_____

[1]John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment. TEX. GOV'T CODE ANN. §75.002(a)(1) (Vernon Supp. 2003).

### *Standard of Review*

Whether the trial judge erred in denying a motion to suppress depends upon whether he abused his discretion. *Guzman v. State,* 955 S.W.2d 85, 87 (Tex. Crim. App. 1997); *Taylor v. State*, 54 S.W.3d 21, 24 (Tex. App.—Amarillo 2001, no pet.). Whether he abused his discretion depends upon whether the decision fell outside the zone of reasonable disagreement. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991); *Taylor v. State*, 54 S.W.3d at 24. In making the latter determination, we defer to the trial court's resolution of historical fact. *Guzman v. State*, 955 S.W.2d at 89; *Taylor v. State*, 54 S.W.3d at 24. Yet, the same is not true about the trial court's interpretation of law or application of law to fact; regarding those issues, no deference is required for review is *de novo*. *Id.*

Next, it is beyond dispute that a search warrant may not be issued unless sufficient facts are presented to a magistrate which permit him to conclude that probable cause exists supporting the warrant's issuance. TEX. CODE CRIM. PROC. ANN. art. 18.01(b) (Vernon Supp. 2000); *Taylor v. State*, 54 S.W.3d at 24. Furthermore, these facts must be contained in a "sworn affidavit" accompanying the application for the warrant, *id.*, and illustrate 1) that a specific offense was committed, 2) that the specifically described property or items to be sought and seized constitute evidence of that offense or evidence that a particular person committed the offense, and 3) that the property or items in question are located at or on the particular person, place or thing to be searched. TEX. CODE CRIM. PROC. ANN. art. 18.01(c); *Taylor v. State*, 54 S.W.3d at 24. Whether the facts mentioned in an affidavit are adequate to establish probable cause depends on the totality of the circumstances. *Ramos v. State*, 934 S.W.2d 358, 362-63 (Tex. Crim. App. 1996), *cert.*

*denied*, 520 U.S. 1198, 117 S.Ct. 1556, 137 L.Ed.2d 704 (1997); *Taylor v. State*, 54 S.W.3d at 24. The facts do so when they permit one to reasonably conclude that the object of the search is probably on the premises. *Id.* In other words, the magistrate must have before him sufficient facts upon which to reasonably conclude that "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983); *Taylor v. State*, 54 S.W.3d at 24. And, it is our duty to insure that the magistrate had a "'substantial basis'" for so concluding. *Illinois v. Gates*, 462 U.S. at 238-39, 103 S.Ct. at 2332, 76 L.Ed.2d 527; *Taylor v. State*, 54 S.W.3d at 24. Finally, in reaching his decision, the magistrate may draw reasonable inferences from facts and circumstances alleged in the affidavit before him. *Ramos v. State*, 934 S.W.2d at 363; *Taylor v. State*, 54 S.W.3d at 24.

### *Application of the Standard*

Because the dispute concerns the existence of probable cause to support the magistrate's decision to issue the search warrant, we restrict our review of the record to the four corners of the affidavit accompanying the request for the warrant. *Oubre v. State*, 542 S.W.2d 875, 877 (Tex. Crim. App. 1976). According to the contents of the affidavit at bar, permission was sought to search a home located at 104 Mistywood Street (the residence or suspected place). The affiant believed that appellant had "possession of, and is concealing at said suspected place . . . [methamphetamine] kept, prepared or manufactured in violation of the laws of this state [and] other paraphernalia, implements, instruments, and packaging used in the commission of the offense of Manufacture, Possession and Delivery of" that controlled substance. The affiant further said that:

3

On April 18, 2002, affiant received information from a [reliable] confidential informant . . . referred to as CI#1 . . . that within the past twenty four hours . . . CI#1 had personally been to the residence . . . at 104 Mistywood Street . . . and had spoken with a white male personally known by the CI#1 to be Bryan Golden. Affiant personally knows that . . . Golden was present at a location in Angelina County when a methamphetamine laboratory was seized along with a quantity of methamphetamine. CI#1 advised affiant that . . . Golden appeared to be under the influence of methamphetamine and that . . . Golden stated . . . that "we just cooked dope last night and I am 'tweaking' out" [sic]. From training and experience, I know that "tweaking" is slang . . . which indicates they have ingested methamphetamine. Affiant further believes CI#1 to be credible and reliable in that [appellant] and . . . Golden have been associated with the manufacture and/or use of methamphetamine in the past as detailed in the affidavit.

So too did the affiant 1) generally describe various methods by which the controlled substance could be manufactured, 2) opined that one method (the Nazi method) was an easy one to utilize and required "only ordinary beverage containers such as drip style coffee pots, buckets, mason jars, funnels and common kitchen glassware and utensil," and 3) appellant allegedly was arrested once before for possessing a controlled substance over a year earlier. Notably absent from the affidavit, however, is any mention of 1) where Golden allegedly "cooked dope" the night before, 2) what method was allegedly used to "cook" it, 3) whether he used a method that enabled him to "cook" dope at the residence, 4) the presence of chemicals or equipment in the residence that could be used to "cook" methamphetamine, 5) the presence of methamphetamine or matter that looked like it in the residence (aside from that allegedly coursing through Golden's body), 6) whether methamphetamine was previously made at the residence, 7) whether methamphetamine is normally made in a residence, 8) the time at which Golden allegedly "tweak[ed] out" on methamphetamine, 9) the time period over which such a drug and its affects dissipate from the body, 10) whether the unique odor accompanying the manufacture of

4

methamphetamine was present in the residence,[2] 11) whether Golden or appellant was at the residence on the night the drug was "cooked," 12) the location in Angelina County whereat the police previously seized the contents of a methamphetamine laboratory, 13) the location whereat appellant was previously arrested for possessing a controlled substance, or 14) the nature of the substance that she allegedly possessed when previously arrested.

In short, the pertinent and substantive allegations purportedly justifying the search of the residence consisted of nothing more than the statement that methamphetamine was cooked within the previous 24 hours at some unmentioned place by Golden and someone else, Golden was later found intoxicated, Golden was previously at some unmentioned location where drug paraphernalia was seized at some time or another, and appellant was previously arrested for possessing a controlled substance. These circumstances differ little from those before us in *State v. DeLeon*, No. 07-95-0339-CR ( Tex. App.—Amarillo 1996, no pet.).[3] There, the magistrate was told that drugs had been purchased from DeLeon within the last 24 hours but not the location of the sale. Nor was it told that the affiant or informant saw any drugs at the location to be searched. Given those circumstances, we concluded that the allegations were not enough to establish probable cause justifying

---

[2]Courts have recognized for some time now that a unique odor emanates from the manufacture of methamphetamine. *See Hass v. State*, 790 S.W.2d 609, 612 (Tex. Crim. App. 1990) (so recognizing); *Wynn v. State*, 996 S.W.2d 324, 327 (Tex. App.--Fort Worth 1999, no pet.) (noting that methamphetamine had a distinct sweet smell).

[3]Though the opinion went unpublished and constitutes no binding precedent, its reasoning is nonetheless persuasive. Moreover, the fact that an opinion is unpublished does not mean that a court is free to disregard the law and arrive at any conclusion it may care to when addressing the dispute there involved. Quite the contrary, the law must be followed when adjudicating each appeal irrespective of whether the ensuing opinion is published or not, and we have no doubt that it was followed in *DeLeon*. Simply put, there is little reason to ignore the thought contained, legal citation mentioned, and conclusions arrived at in *DeLeon*, though the opinion itself may not be binding precedent.

issuance of a search warrant to search the suspected location. We find reason and foundation in that holding and in its application to the circumstances before us. So, in view of the complete absence of any facts regarding the presence of 1) methamphetamine (save for that suggesting that Golden supposedly ingested the drug at some unmentioned time and at some unmentioned place), or 2) methamphetamine making equipment or chemicals at the residence to be searched, one cannot reasonably say there exists a fair probability that such a drug and the paraphernalia used to make it were at the residence. Too many gaps are to be filled with guess, hope, and surmise when attempting to infer from the fact that drugs were made somewhere by a person who was high that drugs were made at the place to be searched. *See Hass v. State*, 790 S.W.2d 609, 612 (Tex. Crim. App. 1990) (concluding that one cannot reasonably infer that drug making equipment can be found in a warehouse simply from the fact that the individual possessed drugs in his car while outside the warehouse). And, whatever discretion to which the trial court is entitled cannot be used to fill them.

Thus, the trial court erred in failing to grant appellant's motion and suppress the evidence of the contraband found as a result of the search. Furthermore, since that search provided the evidence of appellant's guilt, we conclude that the error was harmful per Texas Rule of Appellate Procedure 44.2(a).

Accordingly, the judgment is reversed and the cause is remanded for further proceedings.


Brian Quinn
Justice

Publish.

6