**John Benjamin POOL, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 10–03–00094–CR.**

Court of Appeals of Texas,
Waco.

Dec. 15, 2004.

Damara H. Watkins, Corsicana, for appellant.

Steve A. Keathley, Navarro County Dist. Atty., Corsicana, for appellee.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.

## MEMORANDUM OPINION

FELIPE REYNA, Justice.

Based upon an informant's tip and suspicious activities observed at John Pool's residence, officers obtained a search warrant and found methamphetamine and items used in the manufacture of methamphetamine. Pool was arrested and filed a motion to suppress the evidence alleging that an illegal warrantless search provided the basis for the search warrant. Pool's motion was denied, and he pleaded guilty, subject to the appeal of his motion. Because the officers engaged in an improper warrantless search, and because the affidavit for the search warrant does not establish probable cause once the facts gained from the warrantless search are omitted, we reverse.

## BACKGROUND

An unknown confidential informant told Captain Jimmy Spencer that he had observed several people walking around Pool's house, along with several propane tanks in Pool's yard. The confidential informant also told Spencer that Pool was "probably cooking methamphetamine."

Spencer and officers Todd Henkle, Michael Turner, and Brad Gannon decided to commence a "knock and talk" with Pool, where they would knock at Pool's door and initiate a conversation with him in an attempt to corroborate the informant's information. Upon arriving at Pool's, Turner walked to the front door, knocked, and Pool answered. Turner told Pool about the information they had received concerning the manufacturing of methamphetamine and asked if they could search the premises. Pool initially gave his consent to search, yet immediately retracted it. While at the front door, Turner smelled a "chemical" odor.

After Pool answered the door, Spencer and Gannon traversed around a sixteen-foot-long partial fence attached to the side of Pool's mobile home and entered Pool's backyard. Once in the backyard, Spencer faintly smelled anhydrous ammonia, a chemical used in the manufacture of methamphetamine.[1] At the back of the house, the officers noticed four propane tanks. A hose was attached to one of the tanks with blue oxidation around the valve, indicating to the officers the presence of anhydrous ammonia. Also, the officers could smell anhydrous ammonia emanating from the tanks. Meanwhile, Turner observed in plain view coffee filters, a cooler with duct tape, and a container with an unknown liquid next to a beige travel trailer. At this point, Spencer left to obtain a search warrant.

A search warrant was granted, and after finding methamphetamine and items used in the manufacture of methamphetamine,

---

1. The affidavit for the search warrant does not state at what point Spencer smelled the ammonia. The affidavit states only that the ammonia was smelled as the officers were walking to the back door. However, in the hearing on the motion to suppress, Spencer testified that he did not smell the ammonia until he was already in the backyard.

the officers arrested Pool. Pool filed a motion to suppress the evidence alleging that it was obtained in violation of his constitutional privilege to be free from unreasonable searches and seizures. After the trial court denied Pool's motion, Pool pleaded guilty, subject to the appeal of the denial of his motion and was sentenced to six years' incarceration.

Pool argues that the trial court erred in denying Pool's motion to suppress because (1) the affidavit for the search warrant does not establish probable cause; (2) the search warrant was based on information gained from a prior illegal warrantless search in violation of the Fourth Amendment to the United States Constitution; and (3) in violation of article I, section 9 of the Texas Constitution.

## THE WARRANTLESS SEARCH

Pool argues in his second and third issues that the trial court erred in denying his motion to suppress because the search warrant was based on evidence obtained during a warrantless search in violation of the United States and Texas Constitutions, respectively. Pool argued these points to the trial court in his motion to suppress, and has preserved this issue for review. *See* TEX.R.APP. P. 33.1(a)(1).

The Court of Criminal Appeals has recently clarified its position, as described in *Guzman*, on the standard of review applicable to motions to suppress.

In *Guzman*, we relied in part on *Ornelas v. United States*, 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996). In *Ornelas*, a case involving a warrantless search, the Supreme Court held that appellate review of reasonable suspicion and probable cause should be conducted *de novo*. *Ornelas*, 517 U.S. at 697–98, 116 S.Ct. 1657, 134 L.Ed.2d 911. However, the Supreme Court went on to distinguish its prior holding in *Gates*,

that a magistrate's decision to issue a search warrant should be given deference and not reviewed *de novo*. The Supreme Court reiterated that the distinction between the standards of review applied to the determination of probable cause in warrant and warrantless searches was based on the Fourth Amendment's strong preference for searches conducted pursuant to a warrant and the need for an incentive to encourage police to use the warrant process. *Ornelas*, 517 U.S. at 698, 116 S.Ct. 1657, 134 L.Ed.2d 911.

*Guzman* merely articulated a general principle for determining when an issue should be reviewed *de novo* and when it should be reviewed deferentially. The standard to be applied to the review of a magistrate's determination of probable cause in issuing a search warrant is an exception to the general rule set out in *Guzman*. It is an exception mandated by the Fourth Amendment.

We recognize the distinction between the standards of review applicable to warrantless searches and searches pursuant to a warrant and reaffirm that a magistrate's determination to issue a warrant is subject to the deferential standard of review articulated in *Gates* and *Johnson*.

*Swearingen v. State*, 143 S.W.3d 808, 811 (Tex.Crim.App.2004).

We interpret this language to mean that the *de novo* standard articulated in *Guzman* is appropriate when reviewing a warrantless search, while a deferential standard is used when reviewing a search pursuant to a warrant. Because Pool's issues require review of both a warrantless search and a search pursuant to a warrant, we will review the issue of whether a warrantless search occurred using the *Guzman* standard and will give appropriate deference to the magistrate when re-

viewing Pool's first issue regarding the search warrant.

Therefore, in regards to Pool's second and third issues, we review the denial of a motion to suppress giving almost total deference to the trial court's determinations of historical facts and decisions involving mixed questions of law and fact if the resolution of those questions depends on an evaluation of credibility and demeanor. *See Guzman v. State,* 955 S.W.2d 85, 89 (Tex.Crim.App.1997). If the application of the law to facts is not dependent on an evaluation of credibility and demeanor, then our review is *de novo. Id.; Brown v. State,* 115 S.W.3d 633, 635 (Tex.App.-Waco 2003, no pet.).

The Fourth Amendment to the United States Constitution and article I, section 9 of the Texas Constitution protect against unreasonable searches and seizures. U.S. CONST. amend. IV; TEX. CONST. art. I, § 9. This protection includes both the home and the curtilage of the home. *Oliver v. United States,* 466 U.S. 170, 180, 104 S.Ct. 1735, 1742, 80 L.Ed.2d 214, 225 (1984); *Gonzalez v. State,* 588 S.W.2d 355, 360 (Tex.Crim.App.1979). "Curtilage" is the land immediately surrounding and associated with the home. *Gonzalez,* 588 S.W.2d at 360.

The Supreme Court has promulgated certain factors for an appellate court to consider when resolving curtilage questions. *United States v. Dunn,* 480 U.S. 294, 301, 107 S.Ct. 1134, 1139, 94 L.Ed.2d 326, 334–35 (1987). The reviewing court should consider (1) the proximity of the area claimed to be the curtilage of the home; (2) whether the area is included within an enclosure surrounding the home; (3) the nature of the uses to which the area is put; and (4) the steps taken by the resident to protect the area from observations by people passing by. *Id.*

The State argues that Pool's backyard does not meet this criteria. The record shows that Pool lives in a mobile home in a heavily wooded plot off of a secluded private road. A no-trespassing sign is posted at the beginning of his driveway. Attached to the side of Pool's home is a six-foot high fence that extends approximately sixteen feet horizontally from the home. The backyard is not visible from the street, nor could the officers see the backyard from their position at Pool's front door.

The State argues that because the backyard is not enclosed by the fence, it is not curtilage, and therefore not protected by the Fourth Amendment. Without a fence, the State argues, the owner has not taken steps to ensure that the area is free from the observations of people passing by. Thus, any passersby could walk to the rear of the home and observe the evidence there in plain view.

While mindful of the lack of complete enclosure, we are loathe to hold, as the State suggests, that residents failing to erect a complete enclosure around their backyard no longer enjoy Fourth Amendment protection in their backyard. This type of bright line rule would restrict Fourth Amendment protections to only those capable of affording such enclosures, while those incapable lose privacy interests in their backyards.

Moreover, the absence of an enclosure is only one of the four factors we must consider. The presence of the partial fence, the no-trespassing sign, and the inability to observe the backyard from the street are indications that Pool attempted to protect his backyard from people passing by. Furthermore, the area Pool claimed to be his backyard was immediately outside and adjacent to his back door, which is the place the officers discovered the suspicious evidence. Accordingly, we find that the

area of Pool's backyard at issue is curtilage and therefore constitutionally protected. *See Gonzalez,* 588 S.W.2d at 360; *State v. Peyrani,* 93 S.W.3d 384, 387–88 (Tex.App.-Houston [14th Dist.] 2002, pet. ref'd); *Johnson v. State,* 47 S.W.3d 701, 706 (Tex.App.-Houston [14th Dist.] 2001) *rev'd on other grounds,* 84 S.W.3d 658 (Tex.Crim.App.2002) (reversing the lower court because appellant's notice of appeal did not substantially comply with Tex. R.App. P. 25.2(b)(3)).

 For a warrantless search onto curtilage to be justified, the State must prove that there was probable cause at the time the search was made, **and** that there were exigent circumstances that made it impractical to procure a warrant. *McNairy v. State,* 835 S.W.2d 101, 106 (Tex.Crim.App.1991); *Conde v. State,* 135 S.W.3d 252, 255 (Tex.App.-Waco 2004, no pet.).

 The State does not argue that the officers had probable cause to enter the backyard, or that given probable cause, exigent circumstances existed. They argue that the officers went into the backyard for their safety to secure the area so as not to be surprised by unknown potentially-armed persons. In that respect, the officers' actions resemble that of a protective sweep, authorized in certain instances when probable cause is absent.[2] The State cites no authority for this position, nor are we aware of any authority that holds that, in the absence of probable

cause, a warrantless entry into a home is justified as a protective sweep. *See Johnson,* 47 S.W.3d at 706–07.

In analyzing the existence of probable cause, we find *Johnson v. State* illustrative. In *Johnson,* an unknown informant told Officer Bowdoin that he had looked through Johnson's backyard fence and saw him manufacturing crack cocaine. *Id.* at 705. Bowdoin, along with Officer Gordy, went to Johnson's residence to investigate. *Id.* The officers went to the back of the house and looked through the slats of Johnson's fence. *Id.* From this vantage point they could see into Johnson's window and observed a triple beam balance scale and a box of baking soda. *Id.* Gordy went to the front of the house to initiate a "knock and talk" while Bowdoin positioned himself outside the gate to the backyard. *Id.* Bowdoin saw a man in the house look out a window, appear surprised, and then dart away from the window. *Id.* Bowdoin, stating that he was concerned for the officers' safety, entered the backyard. *Id.* He looked through the glass patio door and saw crack cocaine. *Id.* Subsequently, Bowdoin entered the house and arrested Johnson. *Id.*

The Fourteenth Court of Appeals found that Bowdoin had no probable cause to justify the entrance into Johnson's backyard. *Id.* at 707. The Court reasoned that the scale and the baking soda were both legal items, neither of which corroborated the informant's information. *Id.*

---

2. Situations authorizing protective sweeps without probable cause include: (1) Officers may do a protective sweep in a house as a search incident to an arrest when they are lawfully in the house executing an arrest warrant, and there is a reasonable belief that dangerous persons are in the house. *Maryland v. Buie,* 494 U.S. 325, 334, 110 S.Ct. 1093, 1098, 108 L.Ed.2d 276, 286 (1990); (2) Officers may perform a protective sweep of a car's interior when there is a reasonable be-

lief that the car's occupant is dangerous. *Michigan v. Long,* 463 U.S. 1032, 1049, 103 S.Ct. 3469, 3481, 77 L.Ed.2d 1201, 1219 (1983); and (3) Officers may detain a person on the street and in the interest of safety perform a pat down search for weapons when the officers have a reasonable suspicion that criminal activity is afoot. *Terry v. Ohio,* 392 U.S. 1, 24–25, 88 S.Ct. 1868, 1881–82, 20 L.Ed.2d 889, 908 (1968).

Also, the fact that Johnson appeared surprised and darted away from the window was not illegal and not unusual given the late hour. *Id.*

Similarly, in this instance the only information the officers possessed that could justify an intrusion into Pool's backyard was the unknown informant's tip that Pool was "probably" cooking methamphetamine, and the chemical odor smelled by Turner at Pool's front door. The chemical smell is not defined, and as such cannot be said to be illegal. Also, the smell of ammonia, itself a legal substance, was not discovered until Spencer had already entered Pool's backyard. We find that this information does not constitute probable cause to justify the officers' entry into Pool's backyard. Because there is no probable cause, any exigent circumstances would not justify a warrantless entry. *See McNairy*, 835 S.W.2d at 106.

In the alternative, the State argues that the officers were justified in entering Pool's backyard because it is not unusual for an officer to go to the back door to contact the resident. Officers have the same right as any invitee to enter onto residential property and walk up to the front door. *Cornealius v. State*, 900 S.W.2d 731, 733–34 (Tex.Crim.App.1995); *Bower v. State*, 769 S.W.2d 887, 897 (Tex. Crim.App.1989). In addition, police have the right to go to the back door to contact a resident, but only after they have first tried the front door and have received no answer. *Gonzalez*, 588 S.W.2d at 359 (citing *Long v. State*, 532 S.W.2d 591, 594–95 (Tex.Crim.App.1976) (holding that an officer's attempt in contacting the inhabitants of a house by knocking on the back door after receiving no response at the front door is not a warrantless search)); *Peyra-*

*ni*, 93 S.W.3d at 387–88 (finding an unconstitutional warrantless search when officers, after months of surveillance at the residence, and after finding marijuana in a van leaving the residence, failed to knock at the front door and instead walked around to the backyard after hearing voices behind the house).

In this case, Pool answered Turner's knock at the front door and was talking to him as the other officers went around to the backyard. Because the resident of the house answered, there was no need to go to the backyard and knock on the door. *Gonzalez*, 588 S.W.2d at 359. Therefore, we sustain Pool's second and third issues.

## THE SEARCH WARRANT

Pool argues in his first issue that the trial court erred in denying his motion to suppress because the affidavit for the search warrant does not establish probable cause. As stated above, we review a trial court's decision on a motion to suppress based upon a search pursuant to a warrant under a deferential standard, giving deference to the magistrate[3] that reviewed the affidavit for the search warrant. *Swearingen*, 143 S.W.3d at 811.

A search warrant may not issue unless sufficient facts are first presented to a magistrate upon which he may conclude that there is probable cause to believe the object of the search is probably on the premises. Tex.Code Crim. Proc. Ann. art. 18.01(b) (Vernon Supp.2004 & 2005). These facts must be contained in an affidavit accompanying the application for the warrant. *Id.* art. 18.01(c). When reviewing a magistrate's decision to issue the warrant, we are confined in our analysis to the four corners of the affidavit.

---

3. We note that the magistrate who reviewed the affidavit for probable cause also presided over Pool's motion to suppress.

*Hankins v. State,* 132 S.W.3d 380, 388 (Tex.Crim.App.2004). However, the magistrate is permitted to draw reasonable inferences from the facts and circumstances alleged, and must interpret the affidavit in a common-sense and realistic manner. *See Lagrone v. State,* 742 S.W.2d 659, 661 (Tex.Crim.App.1987).

■ Therefore, looking at the totality of the circumstances, and giving deference to the magistrate, we must assess whether the affidavit contains sufficient facts to conclude that there is a fair probability that contraband or evidence of a crime will be found at the place to be searched. *Price v. State,* 143 S.W.3d 158, 160 (Tex. App.-Waco 2004, no pet.) (citing *Massey v. State,* 933 S.W.2d 141, 148 (Tex.Crim.App. 1996)); *Cardona v. State,* 134 S.W.3d 854, 858 (Tex.App.-Amarillo 2004, pet. ref'd).

The facts in the affidavit are as follows:

■ Spencer, the affiant, had been receiving information for the past two months from a confidential source that there was a methamphetamine lab at Pool's residence.

■ On the day the search warrant was issued, Spencer received information from the confidential source that several people were walking around outside Pool's residence, that there were propane tanks in Pool's yard, and that Pool was probably cooking methamphetamine.

■ Officer Turner knocked on Pool's door. As Spencer and Gannon were walking to the back door, Spencer could smell the faint smell of Anhydrous Ammonia coming from the yard.

■ As Pool opened the door, Turner could smell the odor of chemicals coming from inside the home. Pool shut the door behind him and locked it.

■ For officer safety, Spencer and Gannon when to the back door. There they noticed a small propane tank beside the back door. They could plainly see blue oxidation on the valve. They could also smell the odor of anhydrous ammonia emanating from the tank. Spencer knows from experience and training that anhydrous ammonia is one of the necessary chemicals used in manufacturing hamphetamine.

■ Turner later saw in plain open view near a beige Fleetwood travel trailer, two propane tanks, a yellow cooler with duct tape sealing the lid, coffee filters, and a container with an unknown liquid.

■ Some of the evidence contained in the affidavit was obtained illegally in the warrantless search of Pool's backyard. Yet, this does not automatically render the search warrant invalid. In this situation, we must put aside the illegally obtained evidence from the affidavit and evaluate the affidavit for probable cause using the remaining lawfully-acquired evidence. *Castillo v. State,* 818 S.W.2d 803, 805 (Tex. Crim.App.1991); *Martin v. State,* 67 S.W.3d 340, 343 (Tex.App.-Texarkana 2001, pet. ref'd).

The propane tanks with blue oxidation on the valve, and the smell of anhydrous ammonia associated with them were found in the illegal warrantless search and will not be considered. Also excluded is the faint smell of ammonia that Spencer smelled as he was going to the back door.

This leaves the following information to consider: the confidential informant, the chemical smell coming from the front door, two propane tanks, a yellow cooler with duct tape sealing the lid, coffee filters, and a container with an unknown liquid.

### The Confidential Informant

 Pool argues that the confidential informant's tip should be given no weight as the affidavit supplies no information regarding the informant's reliability or the basis for his knowledge. The reliability of an informant is important when the information is used to justify a search warrant. *Lilly v. State,* 119 S.W.3d 900, 903 (Tex.App.-Eastland 2003, pet. ref'd) (citing *Torres v. State,* 552 S.W.2d 821, 824 (Tex. Crim.App.1977)). The affiant need not include specific details of the informant's reliability. *Torres,* 552 S.W.2d at 824. All that is required is a statement that the informant has provided information in the past regarding narcotics trafficking, and that information proved correct. *Blake v. State,* 125 S.W.3d 717, 726 (Tex.App.-Houston [1st Dist.] 2003, no pet.) (citing *Torres,* 552 S.W.2d at 824). Such a statement, when interpreted by the magistrate in a realistic and common-sense manner, not only indicates the informant's reliability, but also his familiarity with controlled substances. *Id.*

The affidavit for the search warrant has no such information. The affidavit states that Spencer had been receiving information for the past two months that there was a lab located at Pool's residence, but does not give any information as to whether the informant had given reliable information in the past. Nothing in this statement allows an inference that the informant is reliable. Furthermore, there is no basis for knowing whether the informant could identify methamphetamine, or whether he was familiar enough with the process of creating methamphetamine that he would recognize the presence of a lab. *See Cardona v. State,* 134 S.W.3d 854, 859 (Tex.App.-Amarillo 2004, pet. ref'd).

The informant's statement that Pool was **"probably** cooking methamphetamine" lends nothing substantial to the infor-

mant's reliability. On the contrary, it calls into question his familiarity and knowledge of the manufacturing process and the drug itself. Nothing in both of these statements provides a reasonable basis for the officer's reliance on the informant. *See Davis v. State,* 144 S.W.3d 192, 200 (Tex. App.-Fort Worth 2004, no pet.) (finding no probable cause because the affidavit lacked information that would tend to show that the informant's information was reliable). Nor could the magistrate, even when interpreting the information in a common-sense manner, infer that the informant was reliable. *See Blake,* 125 S.W.3d at 726.

Without sufficient information of reliability, we are left with no possible inference that the statement is true. For instance, based on the informant's information that Pool was probably cooking methamphetamine, that there were several people walking outside of Pool's residence, and that there were propane tanks in the yard, the officers could have walked into a backyard cook-out, the nature of which consists of people being outside using propane tanks to fuel gas grills. Therefore, without sufficient information from which to infer reliability, the informant could be no more than a disgruntled neighbor seeking to disrupt a barbecue because he was not invited.

 With no basis of reliability or knowledge of controlled substances, the informant's statement is similar to that of an anonymous tip because both are characterized by an unsubstantiated statement. *State v. Steelman,* 93 S.W.3d 102, 108 (Tex. Crim.App.2002). A mere anonymous tip, standing alone, does not constitute probable cause. *Id.* Therefore, the informant's statement carries little weight by itself.

### The Chemical Smell

Spencer in the affidavit stated that Turner smelled the odor of chemicals coming

from the front door. This vague statement is capable of such broad interpretation as to render it meaningless. "Chemicals" could many anything from bug spray to paint to bleach, all of which contain chemicals, are aromatic, and are not illegal but common household items. The affidavit also states that "these type chemicals are used in the illegal manufacture of methamphetamine," yet does not describe the chemicals by name or whether these chemicals were the same chemicals smelled at the front door. If the smell of marijuana, itself an illegal substance, taken alone, is not sufficient to establish probable cause, then the smell of ill-defined, potentially legal chemicals should not carry much weight. *See Steelman,* 93 S.W.3d at 108. However, while this isolated statement would carry little weight, it does slightly corroborate the informant's tip because the affidavit does generally state that chemicals are used in the manufacture of methamphetamine. Therefore, we will give this fact some weight.

### Other Various Items

The affidavit also lists two propane tanks, a yellow cooler with duct tape sealing the lid, coffee filters, and a container with an unknown liquid as being found in plain view by Turner. None of these items are illegal. Nor is there any information that links these items to the manufacture of methamphetamine. Without further information, there is no basis to infer that these legal items are being used in an illegal way. Viewed in isolation, these items carry no weight. Likewise, when these items are analyzed in conjunction with the informant's tip and the chemical smell, they carry no weight because there is nothing in the affidavit to connect these items to the manufacture of methamphetamine.

### Analysis

We are required to review the affidavit for probable cause by evaluating the facts in the affidavit under the totality of the circumstances and by giving appropriate deference to the magistrate's decision. *Swearingen,* 143 S.W.3d at 811; *Price,* 143 S.W.3d at 160. Yet, even doing so, the affidavit does not contain sufficient facts to lead to a conclusion that it is more probable than not that Pool was engaging in the activity of manufacturing methamphetamine. The affidavit contains only an informant's tip with no indication of reliability, a "chemical" smell, and various legal items with no connection to the manufacture of methamphetamine. Taken collectively, these facts are insufficient to establish that probable cause existed for the issuance of a warrant to search Pool's residence. *See Lowery v. State,* 98 S.W.3d 398, 402 (Tex.App.-Amarillo 2003, no pet.) (finding "too many gaps are to be filled with guess, hope, and surmise when attempting to infer" from the facts in the affidavit probable cause that the appellant was making drugs. "And, whatever discretion to which the trial court is entitled cannot be used to fill them.").

Therefore, after excluding the illegally seized evidence and after analyzing the remaining facts in the affidavit under the totality of the circumstances and giving deference to the magistrate, we conclude that the magistrate did not have a substantial basis for finding that a search would uncover evidence of a crime. *See id.* Consequently, the trial court erred by denying Pool's motion to suppress. We sustain Pool's first issue.

### CONCLUSION

Because we have concluded that the trial court should have sustained Pool's motion to suppress, we sustain Pool's issues. Accordingly, the judgment of the trial court

is reversed and the case is remanded to the trial court for disposition in accordance with this opinion.

Chief Justice GRAY dissenting.

TOM GRAY, Chief Justice, dissenting.

A citizen reports a contraband drug manufacturing lab. Officers go to investigate. The officer that goes to the door is met by a man and a "chemical" smell. One of the officers prepares an affidavit which contains this information plus additional information. The affidavit is presented to a magistrate. A search warrant is issued. The house is searched. A meth lab is seized. The man is charged. The man is convicted.

When you boil it all down to its essentials, that is what is presented in this case. You can embellish it. You can identify certain things that could have been done better. You can identify some things that did not need to be done. You may even be able to say some things that were done, were done wrong. But what really matters is that an officer smelled the chemical odors generated by a meth lab coming from a location which a citizen had reported was being used as a drub lab, and the officer obtained a search warrant. This is not an unreasonable search and seizure in violation of the Fourth Amendment.

The analysis by the majority is the polar opposite of a proper application of the standard of review, a review giving deference to the trial court's determination of probable cause. *Swearingen v. State*, 143 S.W.3d 808, 811 (Tex.2004); *see also Ornelas v. U.S.*, 517 U.S. 690, 698, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996); *Illinois v. Gates*, 462 U.S. 213, 234–37, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). I may have even been misguided into such an elemental analysis in the past. But here, in this case, it is apparent that a review of a search warrant, and giving appropriate deference to the trial court, is not done the way the majority has performed it. Our review is not performed by an analysis of each phrase and giving it weight in favor of the issuance of the warrant or not. Done in this fashion, things that are each individually legal would never add up to probable cause. How many times have we been told that things that are legal, when reviewed in context of the situation in which they occur, may lead a person to the conclusion that there is a reasonable basis upon which to conclude that illegal activity is occurring? This is particularly true of the observations by trained law enforcement officers, and even more so of those working with a specialization in contraband drug manufacturing.

If we step back from an over-analysis of the details of the affidavit, it is entirely logical for a magistrate to conclude that illegal activity related to the manufacture of drugs was occurring at the location. We sit in our offices, pouring over case books and briefs for hours to conduct this review. In the real world, the one where this decision was made, officers waited around a house they suspect contains a meth lab. No officer knows, and the magistrate certainly does not know, whether the lab, if any, was left cooking, or whether it was stabilized and/or stopped before the people exited the house.

We make the classic mistake of taking the affidavit apart one sentence, one phrase, one word at a time. That is not what it means to conduct a deferential review of a magistrate's determination of probable cause.

Thus, this case is not as complex as the court makes it. The legal issue presented is whether there was probable cause upon which to base the issuance of the search warrant. The only factor which adds any complexity is that the defendant is arguing

that some of the information included in the affidavit was illegally obtained and therefore could not properly be included in the affidavit to obtain the search warrant. The first, simple, and direct analysis is to remove from the affidavit the challenged information and determine whether what remains would support the issuance of the warrant. *See Castillo v. State*, 818 S.W.2d 803, 805 (Tex.Crim.App.1991). I would hold that it would, affirm the trial court's denial of the motion to suppress the evidence, and affirm the conviction. Because the Court reverses the judgment of conviction, I respectfully dissent.[1]

1. There is little doubt that on another day I will have to revisit the expansive discussion on other issues, including further analysis of the standard of review. But I will conserve my resources until those issues could make the difference in a particular case. In this one, they should not.