NO. 07-04-0332-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

MARCH 29, 2006

_____

JAMES G. MIILLER, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE
_____

FROM THE 140TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2003-402899; HONORABLE JIM BOB DARNELL, JUDGE
_____

Before REAVIS and CAMPBELL and HANCOCK, JJ.

**OPINION**

Appellant, James G. Miller, appeals his conviction for the offenses of possession of anhydrous ammonia and an immediate precursor with intent to manufacture a controlled substance. He asserts his conviction violates the federal constitutional prohibitions against double jeopardy and unreasonable searches and seizures. He also challenges the admission of evidence. We affirm.

The events leading up to appellant's arrest and prosecution began with a traffic stop of Iris Rivera in the town of Abernathy in March 2003. Officers found supplies for manufacturing methamphetamine and arrested Rivera and a companion. Rivera agreed to act as an informant for the police. She told them appellant manufactured methamphetamine at his home in Lubbock. On April 9, 2003, Lubbock Sheriff's Office investigator Tom Boswick received essentially the same information from Regina Edwards after she was arrested for a drug related offense. Edwards said the manufacturing took place in the cellar and pointed out the house to officers.

Based on this information officers confirmed appellant lived at that address and observed the house on April 9. They were not able to detect the odor of any chemicals used to manufacture methamphetamine or see anything that would support issuance of a search warrant. The next morning they decided to position officers Gilbert Arredondo and Joe Longway behind the house while Boswick and Vincent Luciano knocked on the front door to ask permission to search the property. At the front door they were greeted by Charlee Biggs who told the officers appellant had left the house but was expected back any time. Longway came from the backyard to report he and Arredondo smelled a strong chemical odor and saw a tank through the open cellar door.[1] The tank valve was discolored, which officers testified tended to indicate it had been exposed to anhydrous ammonia. The officers determined they had enough information to seek a search warrant, but proceeded to conduct a cursory search of the house, which they term a "protective

---

[1] Testimony and photographs depict the cellar door as detached from its hinges and lying in the yard, and depict the open stairway descending into the cellar.

2

sweep," to ensure no one else was in the house who would destroy evidence or pose a threat to them while waiting for the warrant to be issued.

While waiting for the warrant to be issued, the officers accepted Biggs' invitation to wait inside so appellant did not see them when he returned. The record does not reflect whether they asked her for permission to search the house. Officers began searching the property pursuant to the warrant prior to appellant's return. When appellant drove up to the house they detained him and the other occupant of the car, Connie Roy. Roy said she owned the car and gave permission to search it. Officers found plastic tubing, cans of starter fluid, acetone, and pseudoephedrine tablets. They also found lithium batteries in appellant's pocket.

In the house officers found bags of medicine containing pseudoephedrine, lithium batteries, products containing ether, acetone, tubing, an array of glass and plastic containers and methamphetamine. Officers also found two metal tanks. The first was a silver compressed air tank located in the cellar which was visible through the open doorway. The second was a red tank attached to an air compressor located under a tarp in the backyard. Hand-held testing equipment indicated the presence of anhydrous ammonia in both tanks.[2] The silver tank did not contain any liquid. The red tank contained some amount of liquid anhydrous ammonia which the officers disposed of at the house. There was no evidence the officers weighed the tank or otherwise measured the volume of liquid it contained.

_____

[2] Officers testified they did not take the tanks for testing because of the hazardous nature of anhydrous ammonia.

Appellant was charged in a four-count indictment in May 2003. The first count charged him with manufacturing between 4 and 200 grams of methamphetamine. Count two alleged the possession of between 4 and 200 grams of methamphetamine with intent to deliver. Count three alleged the possession of an immediate precursor, specifically ephedrine isomer, with intent to manufacture methamphetamine and count four charged the possession of anhydrous ammonia with intent to manufacture methamphetamine. Each count listed the same offense date, April 10, 2003. The indictment also contained three enhancement paragraphs alleging prior felony convictions.

Appellant sought to suppress evidence obtained in the search of his home and yard. After a hearing the trial court denied this motion and the State proceeded to trial on counts one and two in December 2003. The case was tried to a jury which returned not guilty verdicts on both counts. When the State sought to try appellant for counts three and four, he filed a special plea of jeopardy arguing trial of counts three and four was barred because they were lesser included offenses of the first two counts and would require presentation of some of the same evidence as the first trial. The State countered by arguing counts three and four alleged distinct offenses from those tried in the first trial. It contended the first trial sought to convict appellant for a different batch of methamphetamine than would have resulted from use of the chemicals on which the second trial was based. The trial court denied the plea of jeopardy and the case proceeded to trial in April 2004. Appellant reurged his prior motion to suppress and the trial court again denied the motion. On presentation of the evidence recited above, the jury

4

found appellant guilty of both counts. Punishment, enhanced by his prior convictions, was assessed by the trial court at 99 years confinement.

In his first point appellant argues the second trial and his conviction violate his Fifth Amendment right against twice being placed in jeopardy for the same offense. The Double Jeopardy Clause of the Fifth Amendment consists of three separate protections: (1) it protects against a second prosecution for the same offense after acquittal; (2) it protects against a second prosecution for the same offense after conviction; and (3) it protects against multiple punishments. *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.E.2d 656 (1969); *Langs v. State*, No. PD-1763-04, 2006 Tex. Crim. App. LEXIS 119 (Tex.Crim.App. Jan. 26, 2006).

Analysis of any claim of multiple prosecutions must begin by determining whether the prosecutions are for the same offense. The applicable test was set forth by the U.S. Supreme Court in *Blockburger v. U.S.*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). The *Blockburger* or "same elements" test asks whether each offense contains an element not present in the other. If not, they are considered the "same offense" for double jeopardy purposes, and a successive prosecution is barred. *United States v. Dixon*, 509 U.S. 688, 696, 113 S.Ct. 2849, 2856, 125 L.Ed.2d 556, 568 (1993). Under this standard, a lesser-included offense is the "same offense" for double jeopardy purposes. *Parrish v. State*, 869 S.W.2d 352, 355 (Tex.Crim.App. 1994); Tex. Code Crim. Proc. Ann. art. 37.09 (Vernon 1981). The essential elements relevant to a jeopardy inquiry are those of the charging

instrument, not of the penal statute itself. *Parrish*, 869 S.W.2d at 354; *see State v. Perez*, 947 S.W.2d 268, 272 (Tex.Crim.App. 1997).

The core of appellant's argument that he has been subjected to a second prosecution for the same offense is that both trials concerned the same conduct, the offenses in the second trial were lesser included offenses of the manufacturing count tried in the first trial, and much of the same evidence was used in both trials.[3] By focusing on the evidence of appellant's conduct that overlaps the two trials, appellant invokes a "same conduct" test rejected by the Supreme Court in *Dixon*, 509 U.S. at 703-04, 711, 113 S.Ct. 2849, 2860, 125 L.Ed.2d 556, 573.

Count one of appellant's indictment incorporated language from section 481.112(a) and from the definition of manufacturing in section 481.002(25). It charged that appellant knowingly manufactured methamphetamine "by producing, preparing, propagating, compounding, converting or processing a said controlled substance other than marijuana, directly or indirectly by extraction from substances of natural origin, independently by means of chemical synthesis, or by a combination of extraction and chemical synthesis[.]" Proof of appellant's possession of an immediate precursor, or of anhydrous ammonia, was not required to establish guilt on the manufacturing count. *See Green v. State*, 930 S.W.2d 655, 657 (Tex.App.--Fort Worth 1996, pet. ref'd) (form in which controlled substance recovered not determinative of whether accused has committed the offense of

---

[3] The record before us in this appeal does not include a complete reporter's record from appellant's first trial. For purposes of our disposition of appellant's claim of double jeopardy, we assume the evidence was the same in both trials.

manufacturing; evidence showing any of the procedures listed in section 481.002(25) is sufficient); *Fronatt v. State*, 630 S.W.2d 703, 704 (Tex.App.--Houston [1st Dist.] 1981, pet. ref'd) (same).

The court in *Hardie v. State*, 79 S.W.3d 625 (Tex.App.–Waco 2002, pet. ref'd), after comparing the elements of the two offenses of possession of methamphetamine and manufacturing methamphetamine, held that the former cannot be a lesser-included offense of the latter. *Id*. at 631. We need not consider in this case whether possession of an immediate precursor or anhydrous ammonia with intent to manufacture would never be lesser-included offenses of manufacturing methamphetamine. The State argues the rationale of *United States v. Anderson*, 987 F.2d 251, 255 (5th Cir. 1993), *cert. denied*, 510 U.S. 853, 114 S.Ct. 157, 126 L.Ed.2d 118 (1993), defeats appellant's double jeopardy claim, and we agree. That court affirmed simultaneous convictions for the offenses of manufacturing methamphetamine and attempting to manufacture methamphetamine. It found the evidence showed the offenses were factually distinct because they were based on different batches of methamphetamine. *Id. at 255*. *See also Ex parte Tomlinson*, 886 S.W.2d 544, 546 (Tex.App.--Austin 1994, no pet.). The State contends appellant's first and second trials likewise did not involve his prosecution for the same conduct because each was based on a different batch of methamphetamine.

Evidence introduced at appellant's second trial included State's exhibit 11, a plastic bottle that the State's chemist Scott Williams testified contained 38.19 grams of a liquid containing methamphetamine. Williams also testified State's exhibit 10, described as a

"bottle with red liquid," contained 632 grams of the immediate precursor ephedrine isomer. Testimony concerning the manufacture of methamphetamine indicated production occurs in batches rather than as a continuous process. Even under a "same conduct" double jeopardy analysis, appellant's claim that possession of the immediate precursor was a lesser included offense of manufacturing methamphetamine could be meritorious only if the methamphetamine had been created using the immediate precursor on which the second prosecution was based. Like the defendant in *Anderson*, appellant's prosecution for possession of a separate batch of the immediate precursor did not represent prosecution simply for a step in the manufacturing process, but for factually distinct conduct. *Anderson*, 987 F.2d at 255.

The evidence concerning possession of anhydrous ammonia is similar, if less specific. DPS trooper Vincent Luciano testified a "few cups" of anhydrous ammonia would be required in the manufacture of a batch of methamphetamine using 80 pseudoephedrine tablets. One of the tanks contained only anhydrous ammonia vapor while the second tank contained some amount of liquid. The only objective test was for the presence of anhydrous ammonia. As noted, the officers did not measure the volume before disposing of it. The presence of liquid anhydrous ammonia, rather than mere vapor, is sufficient to show it was possessed separately from the anhydrous ammonia which would have been used in the previous manufacture of methamphetamine, and was a separate offense.

The record before us fails to show appellant was subject to a second prosecution for the same offense. We overrule his first point.

8

In his second point appellant assigns error to the trial court's denial of his motion to suppress evidence. He contends the search warrant was invalid because it was obtained on the basis of information improperly obtained when officers entered the backyard of the residence.

We initially note that appellant's written motion to suppress, which he reurged at the outset of his second trial, argued that officers lacked lawful grounds for the protective sweep search they made of the inside of appellant's residence. His point of error on appeal, and his argument in support of it, present the contention that officers illegally entered the backyard area of the residence. Because his point of error does not comport with his motion to suppress made at trial, it presents nothing for our review. *Washington v. State*, 152 S.W.3d 209, 213 (Tex.App.–Amarillo 2004, no pet.) (*citing Goff v. State*, 931 S.W.2d 537, 551 (Tex.Crim.App. 1996)).

Moreover, we cannot agree with the contention presented in appellant's point of error, which is premised on the idea that, by entering the backyard of the residence, the officers intruded into an area in which appellant had a reasonable expectation of privacy. It was appellant's burden to establish that proposition. *Washington*, 152 S.W.3d at 213-14 (citing *Villareal v. State*, 935 S.W.2d 134, 138 (Tex.Crim.App. 1996)). He relies on *Pool v. State*, 157 S.W.3d 36 (Tex.App.–Waco 2004, no pet.), contending the backyard fell within the protected curtilage of his home.

Evidence shows the residence occupies a corner lot at the intersection of 34th Street and Avenue N in Lubbock. Commercial buildings are located next door and across both

9

34th Street and the side street, Avenue N.[4]  An alley traverses the rear of the property, which is not enclosed by a fence along the alley or the side street.  The main residence faces 34th Street, and a separate apartment is located at the rear, with its door facing the main residence.[5]  The driveway for the apartment enters the property from the alley.  The cellar in which officers initially saw one of the metal tanks[6] is covered by a concrete slab, and sits near the side street, with its door extending away from the street.  No steps had been taken to protect the area from view.  Neighbors could view the backyard area from their own yards and even directed officers to the cellar during their investigation.

Under many, if not most, circumstances, an urban resident would have a reasonable expectation of privacy in the backyard of his residence. *See United States v. Dunn*, 480 U.S. 294, 301, 107 S.Ct. 1134, 1139, 94 L.Ed.2d 326, 334-35 (1987) (listing factors for finding curtilage).  Here, though, the backyard of appellant's residence also contains the front yard, driveway and entry to the separate apartment.  Police do not intrude on an interest protected by the Fourth Amendment by approaching the front door of a residence, and no reasonable expectation of privacy exists with regard to things observable during such an approach. *Washington,* 152 S.W.3d at 214 (citing *Bower v. State*, 769 S.W.2d

---

[4] Appellant's backyard is thus easily distinguishable from that in *Pool*. The house in *Pool* was located in a heavily wooded area on a "secluded road" and a no trespassing sign was located at the beginning of the driveway.  A six foot high fence extended from the sides of the home and the backyard was not visible from the street.  157 S.W.3d at 41.

[5] The property's owner testified the apartment was rented separately from the residence, and the trial exhibits include separate utility records for the apartment.

[6] Their observance of the tank with its discolored valve was one of the factors officers used to obtain the search warrant.

887, 897 (Tex.Crim.App. 1989), overruled on other grounds by *Heitman v. State*, 895 S.W.2d 681 (Tex. Crim. App. 1991)). Photographs indicate that a person who approached the front door of the apartment by walking across the yard from the side street, rather than from the alley, would walk past the cellar. We conclude that appellant could have had no reasonable expectation of privacy in the backyard or portions of the cellar visible from the backyard.

Appellant advances no challenge to the warrant independent of the officers' entry into the backyard and observation of the cellar contents. We need not separately discuss the adequacy of the evidence supporting the warrant. Reviewing appellant's second point under the standard set forth in *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App. 1997), we find the trial court did not err in denying his motion to suppress and overrule appellant's second point.

In his third point appellant asserts the trial court erred in not excluding evidence of his manufacture or possession of methamphetamine with intent to deliver. He argues the doctrine of collateral estoppel barred the State from introducing such evidence because it would be relitigating matters resolved against it in the first trial.

We find this point presents nothing for our review. Appellant does not support his argument with reference to the record or citation to authority. *See* Tex. R. App. P. 38.1(h). Appellant's argument appears to complain of the trial court's denial of his motion in limine. A motion in limine does not preserve error. *Webb v. State*, 760 S.W.2d 263, 275 (Tex.Crim.App. 1988), *cert. denied*, 491 U.S. 910, 109 S.Ct. 3202, 105 L.Ed.2d 709 (1989).

11

Appellant does not identify, and our review of the record has not disclosed, any objection to evidence addressed in his motion in limine. *See* Tex. R. App. P. 33.1(a) (requiring timely objection and adverse ruling to preserve error).

Moreover, although collateral estoppel can apply to preclude relitigation of an issue even though prosecution is not barred by general double jeopardy principles, *Ex parte Taylor*, 101 S.W.3d 434, 440 (Tex.Crim.App. 2002), its application requires a determination of (1) what facts were necessarily decided in the first proceeding, and (2) whether those facts were essential elements in the second trial. *Ashe v. Swenson*, 397 U.S. 436, 443, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970). The absence of a reporter's record from the first trial precludes our conduct of that analysis. *Taylor*, 101 S.W.3d at 442. We overrule appellant's third issue.

Finding no reversible error in the judgment of the trial court, we affirm that judgment.

James T. Campbell
Justice

Do not publish.