NO. 07-09-0107-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

DECEMBER 8, 2009
                                       ______________________________

PATTI DIANN PERKINS, $9935.00 IN U.S. CURRENCY, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE
_________________________________

FROM THE 286TH DISTRICT COURT OF HOCKLEY COUNTY;

NO. 08-06-21322; HONORABLE PAT PHELAN, JUDGE
_______________________________


Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.
MEMORANDUM OPINION
          Appellant Patti Diann Perkins filed a pro se notice of appeal from the district court’s
no-answer default judgment of forfeiture of $9,935.00. See Tex. Code Crim. Proc. Ann.
art. 59.06 (Vernon 2006) (forfeiture of contraband). On appeal, Perkins raises several
complaints concerning the judgment. The State has not responded to Perkins’s brief. 
Finding the judgment is not final, and thus is not appealable, we dismiss the appeal for
want of jurisdiction.
 
Background
           In May 2008, Perkins was arrested by deputies of the Hockley County Sheriff’s
Department, who alleged they found her in possession of drugs, drug paraphernalia and
$9935 in cash. The next month, the district attorney of Hockley County filed an original
notice of seizure and intended forfeiture, seeking forfeiture from Perkins of the $9935. See
Tex. Code Crim. Proc. Ann. art. 59.04(a)(Vernon 2006) (State's attorney shall commence
forfeiture proceedings not later than thirtieth day after seizure). The State alleged that the
money was contraband subject to seizure under the forfeiture statute, Chapter 59 of the
Texas Code of Criminal Procedure. 
          The State obtained personal service of the forfeiture notice on Perkins on June 10,
2008. The clerk’s record contains no answer filed on Perkins’s behalf. On March 19,
2009, the State filed a Motion for Partial Default Judgment against Perkins. The trial court
heard the State’s motion on the same day. Although Perkins was the only defendant
named in the State’s notice, the record of the hearing reflects that an answer had been
filed on behalf of a man named Pullin. After the hearing, the trial court signed an Order on
Motion for Partial Default Judgment, forfeiting the $9935 to the State and assessing court
costs against Perkins. So far as our record shows, the issue of Pullin’s interest in the
money has not been adjudicated. Perkins timely filed notice of appeal.
Analysis 
          Although forfeiture proceedings are governed by Chapter 59 of the Code of Criminal
Procedure, they are civil in nature. Tex. Code Crim. Proc. Ann. art. 59.05(a) (Vernon
2006); see Prear v. State, 933 S.W.2d 643, 645 (Tex.App.–San Antonio, 1996, no pet.)
(forfeiture proceedings under Chapter 59 are civil in rem proceedings). A final judgment
in a civil case is one that disposes of all parties and all issues in a lawsuit. Lehman v.
Har-Con Corp., 39 S.W.3d 191, 195 (Tex. 2001); Houston Health Clubs, Inc. v. First Court
of Appeals, 722 S.W.2d 692, 693 (Tex. 1986). We see no reason to treat a civil forfeiture
proceeding differently. Indeed, the language of Chapter 59 indicates a final judgment of
forfeiture authorizing disposition of the forfeited property is not rendered until the interests
of all those claiming ownership interests, liens and security interests are determined. See
Tex. Code Crim. Proc. Ann. art. 59.04(I) (requiring “the owner and any interest holder” to
be named as parties to forfeiture proceeding); 59.01(4) (defining interest holder as bona
fide holder of perfected lien or security interest); 59.01(6) (defining owner as “a person who
claims equitable or legal ownership interest”); 59.05(e) (describing procedures for the
protection of nonforfeitable interests in property otherwise subject to forfeiture, and
concluding “[o]n final judgment of forfeiture, the attorney representing the state shall
dispose of the property in the manner required by Article 59.06 of this code.” (Vernon
2006). A court of appeals has no appellate jurisdiction over a nonfinal, interlocutory order
unless expressly authorized by statute. New York Underwriters Ins. Co. v. Sanchez, 799
S.W.2d 677, 679 (Tex. 1990). 
          In this case, the trial court's order granting a partial default judgment with respect
to Perkins’s ownership interest in the $9935 is not a final judgment of forfeiture because
it does not dispose of all parties claiming interests in the money. Chapter 59 contains no
provision authorizing an appeal from an interlocutory order of this nature. Neither Perkins
nor the State has directed us to any statute granting us jurisdiction over this appeal, and
our research has revealed none. 
          Accordingly, acting on our own motion, we dismiss the appeal for want of
jurisdiction. See Buffalo Royalty Corp. v. Enron Corp., 906 S.W.2d 275, 277
(Tex.App.–Amarillo 1995, no writ) (appellate court must address questions of jurisdiction,
sua sponte).
 
                                                                                      James T. Campbell

                                                                                                Justice












 Tomlinson, 886
S.W.2d 544, 546 (Tex.App.--Austin 1994, no pet.). The State contends appellant's first
and second trials likewise did not involve his prosecution for the same conduct because
each was based on a different batch of methamphetamine.

 Evidence introduced at appellant's second trial included State's exhibit 11, a plastic
bottle that the State's chemist Scott Williams testified contained 38.19 grams of a liquid
containing methamphetamine. Williams also testified State's exhibit 10, described as a
"bottle with red liquid," contained 632 grams of the immediate precursor ephedrine isomer. 
Testimony concerning the manufacture of methamphetamine indicated production occurs
in batches rather than as a continuous process. Even under a "same conduct" double
jeopardy analysis, appellant's claim that possession of the immediate precursor was a
lesser included offense of manufacturing methamphetamine could be meritorious only if
the methamphetamine had been created using the immediate precursor on which the
second prosecution was based. Like the defendant in Anderson, appellant's prosecution
for possession of a separate batch of the immediate precursor did not represent
prosecution simply for a step in the manufacturing process, but for factually distinct
conduct. Anderson, 987 F.2d at 255.

 The evidence concerning possession of anhydrous ammonia is similar, if less
specific. DPS trooper Vincent Luciano testified a "few cups" of anhydrous ammonia would
be required in the manufacture of a batch of methamphetamine using 80 pseudoephedrine
tablets. One of the tanks contained only anhydrous ammonia vapor while the second tank
contained some amount of liquid. The only objective test was for the presence of
anhydrous ammonia. As noted, the officers did not measure the volume before disposing
of it. The presence of liquid anhydrous ammonia, rather than mere vapor, is sufficient to
show it was possessed separately from the anhydrous ammonia which would have been
used in the previous manufacture of methamphetamine, and was a separate offense. 

 The record before us fails to show appellant was subject to a second prosecution
for the same offense. We overrule his first point.


 In his second point appellant assigns error to the trial court's denial of his motion to
suppress evidence. He contends the search warrant was invalid because it was obtained
on the basis of information improperly obtained when officers entered the backyard of the
residence. 

 We initially note that appellant's written motion to suppress, which he reurged at the
outset of his second trial, argued that officers lacked lawful grounds for the protective
sweep search they made of the inside of appellant's residence. His point of error on
appeal, and his argument in support of it, present the contention that officers illegally
entered the backyard area of the residence. Because his point of error does not comport
with his motion to suppress made at trial, it presents nothing for our review. Washington
v. State, 152 S.W.3d 209, 213 (Tex.App.-Amarillo 2004, no pet.) (citing Goff v. State, 931
S.W.2d 537, 551 (Tex.Crim.App. 1996)).

 Moreover, we cannot agree with the contention presented in appellant's point of
error, which is premised on the idea that, by entering the backyard of the residence, the
officers intruded into an area in which appellant had a reasonable expectation of privacy. 
It was appellant's burden to establish that proposition. Washington, 152 S.W.3d at 213-14
(citing Villareal v. State, 935 S.W.2d 134, 138 (Tex.Crim.App. 1996)). He relies on Pool
v. State, 157 S.W.3d 36 (Tex.App.-Waco 2004, no pet.), contending the backyard fell
within the protected curtilage of his home. 

 Evidence shows the residence occupies a corner lot at the intersection of 34th Street
and Avenue N in Lubbock. Commercial buildings are located next door and across both
34th Street and the side street, Avenue N. (4) An alley traverses the rear of the property,
which is not enclosed by a fence along the alley or the side street. The main residence
faces 34th Street, and a separate apartment is located at the rear, with its door facing the
main residence. (5) The driveway for the apartment enters the property from the alley. The
cellar in which officers initially saw one of the metal tanks (6) is covered by a concrete slab,
and sits near the side street, with its door extending away from the street. No steps had
been taken to protect the area from view. Neighbors could view the backyard area from
their own yards and even directed officers to the cellar during their investigation.

 Under many, if not most, circumstances, an urban resident would have a reasonable
expectation of privacy in the backyard of his residence. See United States v. Dunn, 480
U.S. 294, 301, 107 S.Ct. 1134, 1139, 94 L.Ed.2d 326, 334-35 (1987) (listing factors for
finding curtilage). Here, though, the backyard of appellant's residence also contains the
front yard, driveway and entry to the separate apartment. Police do not intrude on an
interest protected by the Fourth Amendment by approaching the front door of a residence,
and no reasonable expectation of privacy exists with regard to things observable during
such an approach. Washington, 152 S.W.3d at 214 (citing Bower v. State, 769 S.W.2d
887, 897 (Tex.Crim.App. 1989), overruled on other grounds by Heitman v. State, 895
S.W.2d 681 (Tex. Crim. App. 1991)). Photographs indicate that a person who approached
the front door of the apartment by walking across the yard from the side street, rather than
from the alley, would walk past the cellar. We conclude that appellant could have had no
reasonable expectation of privacy in the backyard or portions of the cellar visible from the
backyard. 

 Appellant advances no challenge to the warrant independent of the officers' entry
into the backyard and observation of the cellar contents. We need not separately discuss
the adequacy of the evidence supporting the warrant. Reviewing appellant's second point
under the standard set forth in Guzman v. State, 955 S.W.2d 85, 89 (Tex.Crim.App. 1997),
we find the trial court did not err in denying his motion to suppress and overrule appellant's
second point.

 In his third point appellant asserts the trial court erred in not excluding evidence of
his manufacture or possession of methamphetamine with intent to deliver. He argues the
doctrine of collateral estoppel barred the State from introducing such evidence because
it would be relitigating matters resolved against it in the first trial.

 We find this point presents nothing for our review. Appellant does not support his
argument with reference to the record or citation to authority. See Tex. R. App. P. 38.1(h). 
Appellant's argument appears to complain of the trial court's denial of his motion in limine. 
 A motion in limine does not preserve error. Webb v. State, 760 S.W.2d 263, 275
(Tex.Crim.App. 1988), cert. denied, 491 U.S. 910, 109 S.Ct. 3202, 105 L.Ed.2d 709 (1989). 
Appellant does not identify, and our review of the record has not disclosed, any objection
to evidence addressed in his motion in limine. See Tex. R. App. P. 33.1(a) (requiring
timely objection and adverse ruling to preserve error). 

 Moreover, although collateral estoppel can apply to preclude relitigation of an issue
even though prosecution is not barred by general double jeopardy principles, Ex parte
Taylor, 101 S.W.3d 434, 440 (Tex.Crim.App. 2002), its application requires a determination
of (1) what facts were necessarily decided in the first proceeding, and (2) whether those
facts were essential elements in the second trial. Ashe v. Swenson, 397 U.S. 436, 443,
90 S.Ct. 1189, 25 L.Ed.2d 469 (1970). The absence of a reporter's record from the first
trial precludes our conduct of that analysis. Taylor, 101 S.W.3d at 442. We overrule
appellant's third issue.

 Finding no reversible error in the judgment of the trial court, we affirm that judgment.


 James T. Campbell

 Justice





Do not publish.



1. Testimony and photographs depict the cellar door as detached from its hinges and
lying in the yard, and depict the open stairway descending into the cellar. 
2. Officers testified they did not take the tanks for testing because of the hazardous
nature of anhydrous ammonia. 
3. The record before us in this appeal does not include a complete reporter's record
from appellant's first trial. For purposes of our disposition of appellant's claim of double
jeopardy, we assume the evidence was the same in both trials.
4. Appellant's backyard is thus easily distinguishable from that in Pool. The house in
Pool was located in a heavily wooded area on a "secluded road" and a no trespassing sign
was located at the beginning of the driveway. A six foot high fence extended from the
sides of the home and the backyard was not visible from the street. 157 S.W.3d at 41.
5. The property's owner testified the apartment was rented separately from the
residence, and the trial exhibits include separate utility records for the apartment.
6. Their observance of the tank with its discolored valve was one of the factors
officers used to obtain the search warrant.