Ronald D. JOHNSON, Appellant,

v.

The STATE of Texas, Appellee.

No. 14–99–00006–CR.

Court of Appeals of Texas, Houston (14th Dist.).

April 26, 2001.

George O. Jacobs, Houston, for appellants.

Carol M. Cameron, Houston, for appellees.

Panel consists of Senior Chief Justice MURPHY and Justices AMIDEI and HUDSON.*

## MAJORITY OPINION

MAURICE AMIDEI, Justice (Assigned).

Appellant was charged with felony possession with intent to deliver a controlled substance, namely, cocaine, weighing at least 400 grams. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112 (Vernon Supp. 2000). After a hearing, the trial court overruled appellant's motion to suppress. Appellant then pleaded guilty and was sentenced to twenty-five years in prison with a $1,000 fine pursuant to a plea agreement. Because we determine that the entry into the premises was without probable cause and that the evidence discovered as a result of the unlawful entry was not admissible, we reverse and remand.

## I. Jurisdiction

■ The State argues that this court has no jurisdiction because appellant failed to perfect his appeal. The State argues that appellant filed a general notice of appeal and that under the circumstances, a general notice is not sufficient to perfect an appeal.

■ If an appeal is from a judgment rendered on a defendant's plea of guilty under article 1.15 of the Code of Criminal Procedure, and the punishment assessed does not exceed that recommended by the prosecutor and agreed to by the defendant, the notice of appeal must specify that the appeal is for a jurisdictional defect; specify that the substance of the appeal was raised by written motion and ruled on before trial; or state that the trial court granted permission to appeal. *See* TEX.

R.APP. P. 25.2(b)(3). Substantial compliance with the rule is sufficient to confer jurisdiction. *Gomes v. State*, 9 S.W.3d 170, 171 (Tex.App.—Houston [14th Dist.] 1999, pet. ref'd).

In *Gomes* this court found substantial compliance where the defendant filed a general notice bearing a handwritten notation in the upper right-hand corner that indicated the appeal was limited to the trial court's ruling that denied appellant's motion to suppress. *See also Miller v. State*, 11 S.W.3d 345, 347 (Tex.App.—Houston [14th Dist.] 1999, pet. ref'd) (finding substantial compliance where general notice of appeal contains handwritten notation stating "Motion to Suppress"; docket sheet shows entry stating "Appeal only on Motion to Suppress"; and trial judge stated on record that he would allow appellant "to appeal [his] decision on the motion to suppress"); *and Flores v. State*, 888 S.W.2d 193, 195 (Tex.App.—Houston [1st Dist.] 1994, pet. ref'd) (finding substantial compliance where docket entry, which is signed by the trial judge, states: "D[efendant] plead guilty per order D[efendant] gave notice of appeal on pre-trial ruling").

Here appellant filed a general notice of appeal only. The judgment, however, beneath the judge's signature and in a blank to the right of a preprinted notation stating, "Notice of Appeal," bears the following hand-printed notation: "11–16–98 'MTN TO SUPPRESS.'" A docket sheet entry dated November 16, 1998, stated, "Defendant gave written notice of appeal as to *motion to suppress only.*" [Underlining in original.] We find the judgment notation and the docket entry constitute substantial compliance sufficient to confer jurisdiction upon this court.

## II. Facts

At about 10 to 11 p.m. March 26, 1998, an individual approached Sheriff Deputy

---

* Senior Chief Justice Murphy and Former Justice Amidei sitting by assignment.

Wayne Bowdoin as he was leaving the Wallisville station in his patrol car. The individual said he had been pursuing an armadillo between his residence and that of his neighbor. He said he hoped to catch the armadillo to kill and eat it. He stated that the armadillo had walked into his neighbor's backyard and that he, the pursuer, had looked through his neighbor's fence and had seen a man in the kitchen processing what he knew to be crack cocaine. Bowdoin testified that he did not know the individual. Bowdoin, on the radio, contacted Sheriff's Deputy Irwin Joseph Gordy to assist him in checking out the report. The deputies followed the individual to the 14400 block of Lorne in the Pine Trails subdivision of Harris County. Bowdoin testified that the area is a "medium to high crime area with heavy narcotics trafficking and some gang violence." The deputies asked the individual to take them to where he had seen the activity. They approached the rear of the house at 14421 Lorne. Bowdoin looked between the slats of the six-foot fence surrounding the back yard. Through a window he saw a triple beam balance scale and a box of baking soda. Gordy was able to look over the fence and also saw the balance and baking soda. Bowdoin testified that he knew that such a balance scale is commonly used in the processing and sale of narcotics and that baking soda is commonly used to process and cut crack cocaine.

The deputies decided to do a "knock and talk." They decided that Gordy would go to the front door of the house, knock, speak to the occupants, and ask to enter and take a look around. Bowdoin would cover the rear of the house for the officer's safety and to make sure nobody left. Bowdoin testified that the gate to the backyard was open and that he positioned himself outside the perimeter of the fence, just outside the gate, and used the gate as cover. A two-foot diameter oak tree also provided cover. While standing there, Bowdoin saw a man, later identified as appellant, open the covering on a window on the north side of the house. The man apparently saw Bowdoin. The deputy said the man had an "extremely surprised look." He said the man then "darted away from the window and in a southerly direction towards the front of the house." Bowdoin testified that he did know whether there were any weapons in the house and that he was concerned for his fellow deputy's safety. Bowdoin entered the backyard and approached the rear of the house. He saw a three-foot long machete on the patio. As he approached the glass patio door, the deputy saw appellant through the door and saw a plastic bag, a little bigger than his fist, in the sink with a golden brown cookie-like substance that he recognized as crack cocaine. Bowdoin drew his weapon and, while outside the house, ordered appellant to lie down on the kitchen floor. Then a nude woman, later identified as co-defendant Annie Washington, entered the kitchen area and began screaming. Bowdoin also ordered the woman to the floor. The deputy then ordered appellant to open the back door. In the meantime, Deputy Gordy had entered the backyard. The deputies entered the house, handcuffed appellant and Washington, conducted a brief inspection of the house, and found a six to seven year old girl asleep in one of the bedrooms. Bowdoin told appellant and Washington he was arresting them for possession of cocaine and asked appellant to sign a written consent to search the house. Appellant, the owner of the house, at first refused. Bowdoin told appellant that if appellant did not sign, he would obtain a search warrant or attempt to obtain a search warrant. Appellant then signed the form. In the subsequent search, Bowdoin found the triple-beam balance scale, plastic bags, two boxes

of baking soda, three beakers on the kitchen counter, three beakers in a microwave oven, and other cocaine.

## III. Discussion

In a single point of error, appellant complains that the trial court erred in overruling his suppression motion because the deputies lacked probable cause to search the house and that the arrest and discovery of contraband were the fruits of an unlawful search.

Appellant appears to couch his arguments in terms of both the Fourth Amendment and article I, section 9, of the Texas Constitution. Appellant does not, however, separately brief his state and federal constitutional claims. We assume, therefore, that appellant claims no greater protection under the state constitution than that provided by federal constitution. *See Muniz v. State,* 851 S.W.2d 238, 251–52 (Tex. Crim.App.1993). That said, we base our decision on the Fourth Amendment grounds asserted by appellant.

 In reviewing a trial court's ruling on a motion to suppress, we should defer to the trial court's ruling on issues involving application of law to facts, particularly if the resolution of the ultimate question turns on an evaluation of credibility or demeanor of the witness. *Joseph v. State,* 3 S.W.3d 627, 633 (Tex.App.—Houston [14th Dist.] 1999, no pet.). Those questions that do not turn upon the application of historical fact to law, we review de novo. *Id.* The Fourth Amendment bars unreasonable searches and seizures. *Maryland v. Buie,* 494 U.S. 325, 331, 110 S.Ct. 1093, 1096, 108 L.Ed.2d 276 (1990). A warrantless search is per se unreasonable unless the government can demonstrate that is falls within one of the exceptions to the Fourth Amendment's warrant requirement. *See Coolidge v. New Hampshire,* 403 U.S. 443, 474–75, 91 S.Ct. 2022,

2042, 29 L.Ed.2d 564 (1971). We view the totality of the circumstances in determining whether probable cause exists under the Fourth Amendment. *See Illinois v. Gates,* 462 U.S. 213, 230–31, 103 S.Ct. 2317, 2328, 76 L.Ed.2d 527 (1983). For a warrantless search to be justified, the State must show the existence of probable cause at the time the search was made, and the existence of exigent circumstances that made impractical the procuring of a warrant. *McNairy v. State,* 835 S.W.2d 101, 106 (Tex.Crim.App.1991). The test for the existence of probable cause is "whether at that moment the facts and circumstances within the officer's knowledge and of which he had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the arrested person had committed or was committing an offense." *Joseph,* 3 S.W.3d at 634. The private property immediately adjacent to a home is entitled to the same protection against unreasonable search and seizure as the home itself. *Gonzalez v. State,* 588 S.W.2d 355, 360 (Tex.Crim. App.1979); *see also California v. Ciraolo,* 476 U.S. 207, 213, 106 S.Ct. 1809, 1812, 90 L.Ed.2d 210 (1986)(stating that suburban yards is curtilage of home where yard surrounded by six-foot outer fence and ten-foot inner fence).

 The State does not argue that the backyard was not curtilage nor does it argue that Bowdoin had probable cause when he entered the backyard in response to exigent circumstances. The State seems to argue, rather, that after appellant saw Bowdoin by the back gate, Bowdoin, even though he lacked probable cause, entered the backyard as a type of protective sweep. The state relies primarily upon cases authorizing protective sweeps or pat downs in the absence of probable cause. *See Buie,* 494 U.S. at 334, 110 S.Ct. at 1098 (holding that where offi-

cers lawfully in defendant's home executing an arrest warrant, officers entitled to do protective sweep of house incident to arrest in interest of safety); *Michigan v. Long*, 463 U.S. 1032, 1049, 103 S.Ct. 3469, 3481, 77 L.Ed.2d 1201 (1983)(holding that officer entitled to do a protective sweep of car's interior in search for weapons where officer has reasonable belief that car's occupant dangerous); *and Terry v. Ohio*, 392 U.S. 1, 24–25, 88 S.Ct. 1868, 1881–82, 20 L.Ed.2d 889 (1968)(holding that where officer has reasonable suspicion to believe criminal activity may be afoot, officer entitled to detain person on the street for brief time for questioning and may, in interest of safety, pat down person's outer clothes searching for weapons). In none of the cases cited, however, has a court approved the initial warrantless intrusion into a home in the absence of probable cause. Where the Supreme Court has not authorized an initial entry into a home in similar circumstances in the absence of probable cause, we are not in a position to do so.

We find that when Deputy Bowdoin entered the backyard, he had no probable cause justifying entry. When the deputies looked over, and through, the fence, they saw no illegal activity. They saw only the scale and baking soda, both legal items. They had the word of an informant of unknown reliability that crack cocaine was being made inside the house. The deputies at that time, aside from seeing the aforementioned items, had not corroborated the informant's information. Even when Bowdoin was seen by appellant as Deputy Gordy approached the front door, appellant looked surprised and "darted" away from the window. Again, neither action in itself was illegal. Given that the hour was late, the actions may not have even been particularly suspicious. After reviewing the totality of the circumstances, we determine that when Bowdoin entered curtilage, he did not yet have probable cause to justify an entry. There being no probable cause, any presumed exigent circumstances would not justify a warrantless entry

 Under state law, no evidence obtained by an officer in violation of the state or federal constitution shall be admitted in evidence against the accused. TEX. CODE CRIM. PROC. ANN. art. 38.23(a) (Vernon Supp.2000). Violation of a constitutional provision in obtaining evidence requires suppression of the evidence. The trial court has no discretion in ruling on the exclusion. *Polk v. State*, 738 S.W.2d 274, 276 (Tex.Crim.App.1987).

 Here, after Bowdoin entered the backyard and approached the patio door, he saw contraband in the kitchen. Had the deputy not unlawfully entered the backyard, he would not have seen the contraband. Thus, the crack cocaine seen from outside the house was not admissible. Bowdoin testified that after he saw the cocaine, he drew his weapon and ordered appellant to the floor. He subsequently arrested appellant and Washington for possession of the cocaine seen in the kitchen. *See* TEX.CODE CRIM. PROC. ANN. art. 14.01 (Vernon 1977) (officer entitled to arrest person without warrant when offense committed in his view). The discovery of the cocaine being the result of an unlawful intrusion, the initial arrests of appellant and Washington based on the discovery of that cocaine also were unlawful.

 Appellant then, however, gave permission to the deputies to search the house. The deputies during the search discovered additional cocaine. We determine, however, that the original unlawful entry and unlawful arrest tainted the consent to search and that the additional contraband discovered was, therefore, not admissible.

To permit the admission of any evidence discovered from a search after an illegal detention, the State must show by clear and convincing evidence that the taint of the illegal detention is too attenuated to also taint the consent to search. *Munera v. State,* 965 S.W.2d 523, 532 (Tex. App.—Houston [14th Dist.] 1997, no pet.). The factors we must consider include (1) whether appellant received *Miranda*[1] warnings or was made aware he could decline the search, (2) the temporal proximity of the consent to the illegal detention including the presence of intervening circumstances, (3) whether the consent was volunteered rather than requested, and (4) the purpose and flagrancy of the official misconduct. *Id.*

Here, in connection with the first factor, Bowdoin testified that he read appellant his *Miranda* warnings and told appellant that appellant could refuse the search, and that if appellant refused the search, the deputies would attempt to obtain a search warrant. As to the second factor, the record is silent as to the exact time lapse between the entry into the house and the signing of the consent, but the record suggests that the initial cursory search took only two or three minutes and that within five minutes, the deputies were joined by a third officer. Appellant signed the consent after the third officer arrived. The deputies had by then holstered their weapons, but appellant still was handcuffed and sitting in a chair. As to the third factor, appellant did not volunteer the consent but consented only after asked. Bowdoin testified that appellant was initially reluctant but then agreed. As to the fourth factor, although Bowdoin testified he was acting in the interest of officer safety, the deputy breached the curtilage without probable cause and entered the house at gunpoint at between 10 and 11 p.m. The deputy arrested appellant and appellant's nude co-defendant at gunpoint. Given the circumstances of the intrusion and the questioning, we determine that the State has failed to demonstrate that the consent was sufficiently attenuated from the original unlawful arrest to avoid the original taint. The consent to search being tainted, the contraband discovered pursuant to the search also was not admissible.

We have determined that Deputy Bowdoin had no probable cause to enter the backyard of appellant's house. The contraband discovered by the officer while he was in the backyard was not admissible. The arrest based on the initial discovery of the contraband was, therefore, unlawful. The State has not demonstrated that the consent to search was untainted by the unlawful arrest. Thus, the contraband discovered pursuant to the consent also was not admissible. The trial court abused its discretion by failing to grant appellant's motion to suppress the evidence.

## IV. Conclusion

Having upheld appellant's single point of error, we reverse the judgment of the court below and remand for further proceedings consistent with this opinion.

HUDSON, Justice, concurring.

In a criminal case, appeal is perfected by timely filing a written notice of appeal. TEX.R.APP. P. 25.2. If, as here, the appeal is from a judgment rendered on the defendant's plea of guilty or nolo contendere under Code of Criminal Procedure article 1.15, and the punishment assessed did not exceed the punishment recommended by the prosecutor and agreed to by the defendant, the notice must: (1) specify that the appeal is for a jurisdictional defect; (2)

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

specify that the substance of the appeal was raised by written motion and ruled on before trial; or (3) state that the trial court granted permission to appeal. TEX. R.APP. P. 25.2(b)(3). Appellant's notice of appeal satisfied none of these requirements.

Relying on this Court's decision in *Gomes v. State*, the majority holds there was "substantial compliance" with Rule 25.2(b)(3) because both the judgment and the docket sheet indicate appellant was attempting to appeal from an adverse ruling on his motion to suppress. 9 S.W.3d 170 (Tex.App.—Houston [14th Dist.] 1999, pet. ref'd) (en banc). The scenario in *Gomes*, however, was distinctly different than the one presented here. There the notice of appeal bore a hand-written notation: "Motion to Suppress Only." We were aided in our interpretation of this hand-written notation by similar expressions contained in extrinsic documents, namely, the judgment and docket sheet, which confirmed our belief that Gomes was appealing from a written motion raised and ruled on before trial. Thus, we derived our jurisdiction in *Gomes* from his *notice of appeal*. While no model of clarity, the notice of appeal substantially complied with Rule 25.2(b)(3)(B).

Here, appellant filed only a general notice of appeal; it contains no cryptic notation, phrase, or other language that might reasonably be construed as a substantial satisfaction of Rule 25.2(b)(3). Thus, we derive our jurisdiction here not from appellant's notice of appeal, but solely from extrinsic documents. While extrinsic documents may be used as aids in *interpreting* sloppy or confusing language in a notice of appeal, I question whether we may look to extrinsic documents as the *source* of our jurisdiction. Nevertheless, the Court of Criminal Appeals authorized just such a procedure in *Riley v. State*, 825 S.W.2d 699 (Tex.Crim.App.1992). There the defendant filed, as here, a general notice of appeal. Included in the record was an order by the trial court granting permission to appeal from the denial of his motion to suppress. Although the notice of appeal did not refer to the order or incorporate it by reference, the Court of Criminal Appeals held that where information required by the Rules of Appellate Procedure can be located in some extrinsic document within the record, jurisdiction is established. Thus, I concur in the majority's conclusion regarding our jurisdiction to entertain this appeal.

With regard to the merits of the search and seizure issue, I disagree with the majority's conclusion that the officers lacked probable cause to believe appellant was in possession of a controlled substance. The officers were informed by a citizen that he had seen appellant processing what he knew to be crack cocaine. The police investigated the allegation. While standing in a public area beyond appellant's fence, the officers saw a triple beam scale and a box of baking soda through appellant's kitchen window. Triple beam scales are not commonly found in homes because their accuracy is not generally required for domestic use. They are, however, commonly used in laboratories—legitimate and clandestine. Moreover, the officers knew from their experience that baking soda is used in the manufacture of "crack" cocaine. I believe this knowledge, coupled with their observations, sufficiently corroborated the informant's allegation that he had seen appellant making what he recognized to be crack cocaine. Thus, I would find the officers possessed probable cause.

However, the existence of probable cause does not, by itself, authorize police to conduct a search or seizure. Probable cause constitutes a sufficient basis for a search only when accompanied by a war-

rant or exigent circumstances. *McNairy v. State*, 835 S.W.2d 101, 106 (Tex.Crim. App.1991). Here, the police did not have a warrant, but claimed the search was supported by an exigent circumstance, namely, danger to Deputy Gordy. According to Deputy Bowdoin, he and his partner had decided that Deputy Gordy would knock on appellant's front door to see what would happen. The plan was frustrated when Bowdoin was observed by appellant before Gordy could reach the front door. However, the physical danger to Gordy would have been very nearly the same if Bowdoin had not been seen. Although drug dealers are frequently armed, Gordy was prepared to confront appellant, whom he believed was presently manufacturing contraband, at the door of his own home, without a warrant, to see what would happen. Police cannot place themselves in physical danger by design and then claim an exception to the warrant requirement.

With these observations, I respectfully concur.