IN THE

TENTH COURT OF
APPEALS




 
 
 
 
 
 
 


 



No. 10-03-00094-CR

 

John Benjamin Pool,

                                                                      Appellant

 v.

 

The State of Texas,

                                                                      Appellee

 

 

 



From the 13th District Court

Navarro County, Texas

Trial Court # 28,571

 



MEMORANDUM 
Opinion



 








          Based upon an informant's tip and suspicious
activities observed at John Pool's residence, officers obtained a search
warrant and found methamphetamine and items used in the manufacture of
methamphetamine.  Pool was arrested and
filed a motion to suppress the evidence alleging that an illegal warrantless
search provided the basis for the search warrant.  Pool's motion was denied, and he pleaded
guilty, subject to the appeal of his motion. 
Because the officers engaged in an improper warrantless search, and
because the affidavit for the search warrant does not establish probable cause
once the facts gained from the warrantless search are omitted, we reverse.

BACKGROUND

          An
unknown confidential informant told Captain Jimmy Spencer that he had observed
several people walking around Pool's house, along with several propane tanks in
Pool's yard.  The confidential informant
also told Spencer that Pool was "probably cooking methamphetamine."

          Spencer
and officers Todd Henkle, Michael Turner, and Brad Gannon decided to commence a
"knock and talk" with Pool, where they would knock at Pool's door and
initiate a conversation with him in an attempt to corroborate the informant's
information.  Upon arriving at Pool's, Turner
walked to the front door, knocked, and Pool answered.  Turner told Pool about the information they
had received concerning the manufacturing of methamphetamine and asked if they
could search the premises.  Pool
initially gave his consent to search, yet immediately retracted it.  While at the front door, Turner smelled a
"chemical" odor.

          After
Pool answered the door, Spencer and Gannon traversed around a sixteen-foot-long
partial fence attached to the side of Pool's mobile home and entered Pool's backyard.  Once in the backyard, Spencer faintly smelled
anhydrous ammonia, a chemical used in the manufacture of methamphetamine.[1]  At the back of the house, the officers
noticed four propane tanks.  A hose was
attached to one of the tanks with blue oxidation around the valve, indicating to
the officers the presence of anhydrous ammonia. 
Also, the officers could smell anhydrous ammonia emanating from the
tanks.  Meanwhile, Turner observed in
plain view coffee filters, a cooler with duct tape, and a container with an
unknown liquid next to a beige travel trailer. 
At this point, Spencer left to obtain a search warrant.

          A
search warrant was granted, and after finding methamphetamine and items used in
the manufacture of methamphetamine, the officers arrested Pool.  Pool filed a motion to suppress the evidence
alleging that it was obtained in violation of his constitutional privilege to
be free from unreasonable searches and seizures.  After the trial court denied Pool's motion,
Pool pleaded guilty, subject to the appeal of the denial of his motion and was
sentenced to six years' incarceration.

          Pool
argues that the trial court erred in denying Pool's motion to suppress because (1)
the affidavit for the search warrant does not establish probable cause; (2) the
search warrant was based on information gained from a prior illegal warrantless
search in violation of the Fourth Amendment to the United States Constitution; and
(3) in violation of article I, section 9 of the Texas Constitution.

THE
WARRANTLESS SEARCH

          Pool
argues in his second and third issues that the trial court erred in denying his
motion to suppress because the search warrant was based on evidence obtained
during a warrantless search in violation of the United States and Texas Constitutions,
respectively.  Pool argued these points
to the trial court in his motion to suppress, and has preserved this issue for
review.  See Tex. R. App. P.
33.1(a)(1).

          The
Court of Criminal Appeals has recently clarified its position, as described in Guzman, on the standard of review
applicable to motions to suppress.

         In
Guzman, we relied in part on Ornelas v. United States, 517 U.S.
690, 116 S. Ct. 1657, 134 L. Ed. 2d 911 (1996). In Ornelas, a case
involving a warrantless search, the Supreme Court held that appellate review of
reasonable suspicion and probable cause should be conducted de novo.
Ornelas, 517 U.S. at 697-98, 116 S. Ct. 1657. However, the Supreme Court
went on to distinguish its prior holding in Gates, that a magistrate's
decision to issue a search warrant should be given deference and not reviewed de
novo. The Supreme Court reiterated that the distinction between the
standards of review applied to the determination of probable cause in warrant
and warrantless searches was based on the Fourth Amendment's strong preference
for searches conducted pursuant to a warrant and the need for an incentive to
encourage police to use the warrant process. Ornelas, 517 U.S. at 698,
116 S. Ct. 1657.

                       

         Guzman merely articulated a general principle for
determining when an issue should be reviewed de novo and when it should be reviewed deferentially.  The standard to be applied to the review of a
magistrate's determination of probable cause in issuing a search warrant is an
exception to the general rule set out in Guzman.  It is an exception mandated by the Fourth
Amendment.

 

         We
recognize the distinction between the standards of review applicable to
warrantless searches and searches pursuant to a warrant and reaffirm that a
magistrate's determination to issue a warrant is subject to the deferential
standard of review articulated in Gates
and Johnson.

 

Swearingen v. State, 143 S.W.3d 808, 811 (Tex. Crim. App. 2004).

          We
interpret this language to mean that the de
novo standard articulated in Guzman
is appropriate when reviewing a warrantless search, while a deferential standard
is used when reviewing a search pursuant to a warrant.  Because Pool's issues require review of both
a warrantless search and a search pursuant to a warrant, we will review the
issue of whether a warrantless search occurred using the Guzman standard and will give appropriate deference to the magistrate
when reviewing Pool's first issue regarding the search warrant.

          Therefore,
in regards to Pool's second and third issues, we review the denial of a motion
to suppress giving almost total deference to the trial court's determinations
of historical facts and decisions involving mixed questions of law and fact if
the resolution of those questions depends on an evaluation of credibility and
demeanor.  See Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).  If the application of the law to facts is not
dependent on an evaluation of credibility and demeanor, then our review is de novo. 
Id.; Brown v.
State, 115 S.W.3d 633, 635 (Tex. App.—Waco 2003, no pet.).

          The
Fourth Amendment to the United States Constitution and article I, section 9 of
the Texas Constitution protect against unreasonable searches and seizures.  U.S. Const. amend. IV; Tex.
Const. art. I, § 9.  This
protection includes both the home and the curtilage of the home.  Oliver
v. United States, 466 U.S. 170, 180, 104 S. Ct. 1735, 1742, 80 L. Ed. 2d 214, 225 (1984); Gonzalez v. State, 588 S.W.2d 355, 360
(Tex. Crim. App. 1979). 
"Curtilage" is the land immediately surrounding and associated
with the home.  Gonzalez, 588 S.W.2d at 360.

          The
Supreme Court has promulgated certain factors for an appellate court to
consider when resolving curtilage questions. 
United States v.
Dunn, 480 U.S. 294, 301, 107 S. Ct. 1134, 1139, 94 L. Ed. 2d 326, 334-35
(1987).  The reviewing court should consider
(1) the proximity of the area claimed to be the curtilage of the home; (2)
whether the area is included within an enclosure surrounding the home; (3) the
nature of the uses to which the area is put; and (4) the steps taken by the
resident to protect the area from observations by people passing by.  Id.

          The
State argues that Pool's backyard does not meet this criteria.  The record shows that Pool lives in a mobile
home in a heavily wooded plot off of a secluded private road.  A no-trespassing sign is posted at the
beginning of his driveway.  Attached to the
side of Pool's home is a six-foot high fence that extends approximately sixteen
feet horizontally from the home.  The
backyard is not visible from the street, nor could the officers see the backyard
from their position at Pool's front door.

          The
State argues that because the backyard is not enclosed by the fence, it is not curtilage,
and therefore not protected by the Fourth Amendment.  Without a fence, the State argues, the owner
has not taken steps to ensure that the area is free from the observations of people
passing by.  Thus, any passersby could
walk to the rear of the home and observe the evidence there in plain view.

          While
mindful of the lack of complete enclosure, we are loathe to hold, as the State
suggests, that residents failing to erect a complete enclosure around their
backyard no longer enjoy Fourth Amendment protection in their backyard.  This type of bright line rule would restrict
Fourth Amendment protections to only those capable of affording such enclosures,
while those incapable lose privacy interests in their backyards.

          Moreover,
the absence of an enclosure is only one of the four factors we must consider.  The presence of the partial fence, the no-trespassing
sign, and the inability to observe the backyard from the street are indications
that Pool attempted to protect his backyard from people passing by.  Furthermore, the area Pool claimed to be his
backyard was immediately outside and adjacent to his back door, which is the
place the officers discovered the suspicious evidence.  Accordingly, we find that the area of Pool's
backyard at issue is curtilage and therefore constitutionally protected.  See
Gonzalez, 588 S.W.2d at 360; State v. Peyrani, 93 S.W.3d 384, 387-88
(Tex. App.—Houston [14th Dist.] 2002, pet. ref'd); Johnson v. State, 47 S.W.3d 701, 706
(Tex. App.—Houston [14th Dist.] 2001) rev'd on other grounds, 84 S.W.3d 658 (Tex. Crim. App. 2002)
(reversing the lower court because appellant's notice of appeal did not
substantially comply with Tex. R. App. P.
25.2(b)(3)).

          For
a warrantless search onto curtilage to be justified, the State must prove that
there was probable cause at the time the search was made, and that there were exigent circumstances that made it impractical
to procure a warrant.  McNairy v. State, 835 S.W.2d 101, 106
(Tex. Crim. App. 1991); Conde v. State,
135 S.W.3d 252, 255 (Tex.
App.—Waco 2004, no pet.).

          The
State does not argue that the officers had probable cause to enter the
backyard, or that given probable cause, exigent circumstances existed.  They argue that the officers went into the
backyard for their safety to secure the area so as not to be surprised by
unknown potentially-armed persons.  In
that respect, the officers' actions resemble that of a protective sweep,
authorized in certain instances when probable cause is absent.[2]  The State cites no authority for this
position, nor are we aware of any authority that holds that, in the absence of
probable cause, a warrantless entry into a home is justified as a protective
sweep.  See Johnson, 47 S.W.3d at 706-07.

          In
analyzing the existence of probable cause, we find Johnson v. State illustrative.  In Johnson,
an unknown informant told Officer Bowdoin that he had looked through Johnson's backyard
fence and saw him manufacturing crack cocaine. 
Id. at 705.  Bowdoin,
along with Officer Gordy, went to Johnson's residence to investigate.  Id.  The
officers went to the back of the house and looked through the slats of
Johnson's fence.  Id.  From
this vantage point they could see into Johnson's window and observed a triple
beam balance scale and a box of baking soda. 
Id.  Gordy
went to the front of the house to initiate a "knock and talk" while
Bowdoin positioned himself outside the gate to the backyard.  Id.  Bowdoin
saw a man in the house look out a window, appear surprised, and then dart away
from the window.  Id.  Bowdoin,
stating that he was concerned for the officers' safety, entered the
backyard.  Id.  He
looked through the glass patio door and saw crack cocaine.  Id.  Subsequently,
Bowdoin entered the house and arrested Johnson. 
Id.

          The
Fourteenth Court of Appeals found that Bowdoin had no probable cause to justify
the entrance into Johnson's backyard.  Id. at 707.  The
Court reasoned that the scale and the baking soda were both legal items,
neither of which corroborated the informant's information.  Id.  Also, the
fact that Johnson appeared surprised and darted away from the window was not
illegal and not unusual given the late hour. 
Id.

          Similarly,
in this instance the only information the officers possessed that could justify
an intrusion into Pool's backyard was the unknown informant's tip that Pool was
"probably" cooking methamphetamine, and the chemical odor smelled by
Turner at Pool's front door.  The
chemical smell is not defined, and as such cannot be said to be illegal.  Also, the smell of ammonia, itself a legal
substance, was not discovered until Spencer had already entered Pool's backyard.  We find that this information does not
constitute probable cause to justify the officers' entry into Pool's backyard.  Because there is no probable cause, any
exigent circumstances would not justify a warrantless entry.  See
McNairy, 835 S.W.2d at 106.

          In
the alternative, the State argues that the officers were justified in entering
Pool's backyard because it is not unusual for an officer to go to the back door
to contact the resident.  Officers have
the same right as any invitee to enter onto residential property and walk up to
the front door.  Cornealius v. State, 900 S.W.2d 731, 733-34 (Tex. Crim. App. 1995); Bower v. State, 769 S.W.2d 887, 897
(Tex. Crim. App. 1989).  In addition, police
have the right to go to the back door to contact a resident, but only after
they have first tried the front door and have received no answer.  Gonzalez,
588 S.W.2d at 359 (citing Long v. State,
532 S.W.2d 591, 594-95 (Tex. Crim. App. 1976) (holding that an officer's
attempt in contacting the inhabitants of a house by knocking on the back door
after receiving no response at the front door is not a warrantless search)); Peyrani, 93 S.W.3d at 387-88 (finding an
unconstitutional warrantless search when officers, after months of surveillance
at the residence, and after finding marijuana in a van leaving the residence, failed
to knock at the front door and instead walked around to the backyard after
hearing voices behind the house).

          In
this case, Pool answered Turner's knock at the front door and was talking to
him as the other officers went around to the backyard.  Because the resident of the house answered,
there was no need to go to the backyard and knock on the door.  Gonzalez,
588 S.W.2d at 359.  Therefore, we sustain
Pool's second and third issues.

THE
SEARCH WARRANT

          Pool
argues in his first issue that the trial court erred in denying his motion to
suppress because the affidavit for the search warrant does not establish
probable cause.  As stated above, we
review a trial court's decision on a motion to suppress based upon a search
pursuant to a warrant under a deferential standard, giving deference to the
magistrate[3]
that reviewed the affidavit for the search warrant.  Swearingen,
143 S.W.3d at 811.

          A
search warrant may not issue unless sufficient facts are first presented to a
magistrate upon which he may conclude that there is probable cause to believe
the object of the search is probably on the premises.  Tex.
Code Crim. Proc. Ann. art. 18.01(b) (Vernon Supp. 2004 & 2005).  These facts must be contained in an affidavit
accompanying the application for the warrant. 
Id. art. 18.01(c). 
When reviewing a magistrate's decision to issue the warrant, we are
confined in our analysis to the four corners of the affidavit.  Hankins
v. State, 132 S.W.3d 380, 388 (Tex. Crim. App. 2004).  However, the magistrate is permitted to draw
reasonable inferences from the facts and circumstances alleged, and must interpret
the affidavit in a common-sense and realistic manner.  See
Lagrone v. State, 742 S.W.2d 659, 661 (Tex. Crim. App. 1987).

           Therefore, looking at the totality of the
circumstances, and giving deference to the magistrate, we must assess whether
the affidavit contains sufficient facts to conclude that there is a fair
probability that contraband or evidence of a crime will be found at the place
to be searched.  Price v. State, 143 S.W.3d 158, 160 (Tex. App.—Waco 2004, no pet.) (citing Massey v. State, 933 S.W.2d 141, 148
(Tex. Crim. App. 1996)); Cardona v. State,
134 S.W.3d 854, 858 (Tex. App.—Amarillo 2004, pet. ref'd).

          The
facts in the affidavit are as follows:  

          ■        Spencer, the affiant, had
been receiving information for the past two months                          from a
confidential source that there was a methamphetamine lab at Pool's

                   residence.

 

          ■        On
the day the search warrant was issued, Spencer received information from

                   the confidential source that
several people were walking around outside Pool's

                   residence, that there were
propane tanks in Pool's yard, and that Pool 

                   was probably cooking methamphetamine.

 

          ■        Officer Turner knocked
on Pool's door.  As Spencer and Gannon were
walking 

                   to the back door, Spencer
could smell the faint smell of Anhydrous Ammonia 

                   coming from the yard.

 

          ■        As Pool opened the door,
Turner could smell the odor of chemicals coming 

                   from inside the home.  Pool shut the door behind him and locked it.

 

          ■        For officer safety,
Spencer and Gannon when to the back door. 
There they                          noticed a small propane tank beside
the back door.  They could plainly see
blue                     oxidation on the
valve.  They could also smell the odor of
anhydrous ammonia                          emanating
from the tank.  Spencer knows from
experience and training that                       anhydrous
ammonia is one of the necessary chemicals used in manufacturing                         hamphetamine.  

 

          ■        Turner later saw in
plain open view near a beige Fleetwood travel trailer, two                        propane
tanks, a yellow cooler with duct tape sealing the lid, coffee filters, and 

                   a container with an unknown
liquid.

 

          Some
of the evidence contained in the affidavit was obtained illegally in the
warrantless search of Pool's backyard.  Yet,
this does not automatically render the search warrant invalid.  In this situation, we must put aside the
illegally obtained evidence from the affidavit and evaluate the affidavit for
probable cause using the remaining lawfully-acquired evidence.  Castillo
v. State, 818 S.W.2d 803, 805 (Tex. Crim. App. 1991); Martin v. State, 67 S.W.3d 340, 343 (Tex. App.—Texarkana 2001, pet.
ref'd).

          The
propane tanks with blue oxidation on the valve, and the smell of anhydrous
ammonia associated with them were found in the illegal warrantless search and
will not be considered.  Also excluded is
the faint smell of ammonia that Spencer smelled as he was going to the back
door.

          This
leaves the following information to consider: the confidential informant, the
chemical smell coming from the front door, two propane tanks, a yellow cooler
with duct tape sealing the lid, coffee filters, and a container with an unknown
liquid.

The
Confidential Informant

          Pool
argues that the confidential informant's tip should be given no weight as the
affidavit supplies no information regarding the informant's reliability or the
basis for his knowledge.  The reliability
of an informant is important when the information is used to justify a search
warrant.  Lilly v. State, 119 S.W.3d 900, 903 (Tex. App.—Eastland 2003, pet.
ref'd) (citing Torres v. State, 552
S.W.2d 821, 824 (Tex. Crim. App. 1977)). 
The affiant need not include specific details of the informant's
reliability.  Torres, 552 S.W.2d at 824.  All
that is required is a statement that the informant has provided information in
the past regarding narcotics trafficking, and that information proved
correct.  Blake v. State, 125 S.W.3d 717, 726 (Tex. App.—Houston [1st Dist.] 2003, no pet.) (citing Torres, 552 S.W.2d at 824).  Such a statement, when interpreted by the
magistrate in a realistic and common-sense manner, not only indicates the
informant's reliability, but also his familiarity with controlled
substances.  Id.

          The
affidavit for the search warrant has no such information.  The affidavit states that Spencer had been
receiving information for the past two months that there was a lab located at
Pool's residence, but does not give any information as to whether the informant
had given reliable information in the past. 
Nothing in this statement allows an inference that the informant is
reliable.  Furthermore, there is no basis
for knowing whether the informant could identify methamphetamine, or whether he
was familiar enough with the process of creating methamphetamine that he would
recognize the presence of a lab.  See Cardona v. State, 134 S.W.3d 854,
859 (Tex. App.—Amarillo 2004, pet. ref'd).

          The
informant's statement that Pool was "probably
cooking methamphetamine" lends nothing substantial to the informant's
reliability.  On the contrary, it calls
into question his familiarity and knowledge of the manufacturing process and
the drug itself.  Nothing in both of
these statements provides a reasonable basis for the officer's reliance on the
informant.  See Davis v.
State, 144
S.W.3d 192, 200 (Tex. App.—Fort Worth 2004, no pet.) (finding no
probable cause because the affidavit lacked information that would tend to show
that the informant's information was reliable).  Nor could the magistrate, even when
interpreting the information in a common-sense manner, infer that the informant
was reliable.  See Blake, 125 S.W.3d at
726.

          Without
sufficient information of reliability, we are left with no possible inference
that the statement is true.  For
instance, based on the informant's information that Pool was probably cooking
methamphetamine, that there were several people walking outside of Pool's
residence, and that there were propane tanks in the yard, the officers could
have walked into a backyard cook-out, the nature of which consists of people being
outside using propane tanks to fuel gas grills. 
Therefore, without sufficient information from which to infer
reliability, the informant could be no more than a disgruntled neighbor seeking
to disrupt a barbeque because he was not invited.

          With
no basis of reliability or knowledge of controlled substances, the informant's
statement is similar to that of an anonymous tip because both are characterized
by an unsubstantiated statement.  State v. Steelman, 93 S.W.3d 102, 108 (Tex. Crim. App. 2002).  A mere anonymous tip, standing alone, does
not constitute probable cause.  Id.  Therefore, the informant's statement carries
little weight by itself.

The
Chemical Smell

          Spencer
in the affidavit stated that Turner smelled the odor of chemicals coming from
the front door.  This vague statement is
capable of such broad interpretation as to render it meaningless.  "Chemicals" could many anything
from bug spray to paint to bleach, all of which contain chemicals, are
aromatic, and are not illegal but common household items.  The affidavit also states that "these
type chemicals are used in the illegal manufacture of methamphetamine,"
yet does not describe the chemicals by name or whether these chemicals were the
same chemicals smelled at the front door. 
If the smell of marijuana, itself an illegal substance, taken alone, is
not sufficient to establish probable cause, then the smell of ill-defined, potentially
legal chemicals should not carry much weight. 
See Steelman, 93 S.W.3d at
108.  However, while this isolated statement
would carry little weight, it does slightly corroborate the informant's tip because
the affidavit does generally state that chemicals are used in the manufacture
of methamphetamine.  Therefore, we will
give this fact some weight.  

Other
Various Items

          The
affidavit also lists two propane tanks, a yellow cooler with duct tape sealing
the lid, coffee filters, and a container with an unknown liquid as being found
in plain view by Turner.  None of these
items are illegal.  Nor is there any
information that links these items to the manufacture of methamphetamine.  Without further information, there is no
basis to infer that these legal items are being used in an illegal way.  Viewed in isolation, these items carry no
weight.  Likewise, when these items are
analyzed in conjunction with the informant's tip and the chemical smell, they carry
no weight because there is nothing in the affidavit to connect these items to
the manufacture of methamphetamine.  

Analysis

          We
are required to review the affidavit for probable cause by evaluating the facts
in the affidavit under the totality of the circumstances and by giving appropriate
deference to the magistrate's decision.  Swearingen, 143 S.W.3d at 811; Price, 143 S.W.3d at 160.  Yet, even doing so, the affidavit does not
contain sufficient facts to lead to a conclusion that it is more probable than
not that Pool was engaging in the activity of manufacturing methamphetamine.  The affidavit contains only an informant's
tip with no indication of reliability, a "chemical" smell, and various
legal items with no connection to the manufacture of methamphetamine.  Taken collectively, these facts are
insufficient to establish that probable cause existed for the issuance of a warrant
to search Pool's residence.  See Lowery v. State, 98 S.W.3d 398, 402
(Tex. App.—Amarillo 2003, no pet.) (finding "too
many gaps are to be filled with guess, hope, and surmise when attempting to
infer" from the facts in the affidavit probable cause that the appellant
was making drugs.  "And, whatever discretion
to which the trial court is entitled cannot be used to fill them.").

          Therefore,
after excluding the illegally seized evidence and after analyzing the remaining
facts in the affidavit under the totality of the circumstances and giving
deference to the magistrate, we conclude that the magistrate did not have a
substantial basis for finding that a search would uncover evidence of a crime.  See id.  Consequently, the trial court erred by
denying Pool's motion to suppress.  We
sustain Pool's first issue.




CONCLUSION

          Because
we have concluded that the trial court should have sustained Pool's motion to
suppress, we sustain Pool's issues. 
Accordingly, the judgment of the trial court is reversed and the case is
remanded to the trial court for disposition in accordance with this opinion.

 

 

 

                                                                   FELIPE REYNA

                                                                   Justice

 

Before Chief Justice
Gray,

          Justice Vance, and 

          Justice Reyna

          (Chief Justice Gray dissenting)

Reversed and remanded

Opinion delivered and
filed December 15, 2004

Publish

[CR25]











    [1]       The affidavit for the search warrant does
not state at what point Spencer smelled the ammonia.  The affidavit states only that the ammonia
was smelled as the officers were walking to the back door.  However, in the hearing on the motion to
suppress, Spencer testified that he did not smell the ammonia until he was
already in the backyard.  





    [2]       Situations authorizing protective sweeps
without probable cause include:  (1)
Officers may do a protective sweep in a house as a search incident to an arrest
when they are lawfully in the house executing an arrest warrant, and there is a
reasonable belief that dangerous persons are in the house.  Maryland
v. Buie, 494 U.S. 325, 334, 110 S. Ct. 1093, 1098, 108 L. Ed. 2d 276, 286 (1990); (2)
Officers may perform a protective sweep of a car's interior when there is a
reasonable belief that the car's occupant is dangerous.  Michigan
v. Long, 463 U.S. 1032, 1049, 103 S. Ct. 3469, 3481, 77 L. Ed. 2d 1201,
1219 (1983); and (3) Officers may detain a person on the street and in the
interest of safety perform a pat down search for weapons when the officers have
a reasonable suspicion that criminal activity is afoot.  Terry
v. Ohio, 392 U.S. 1, 24-25, 88 S. Ct. 1868, 1881-82, 20 L. Ed. 2d 889, 908 (1968).





    [3]       We note that the magistrate who reviewed
the affidavit for probable cause also presided over Pool's motion to suppress.