

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

NO. 2-07-418-CR

TONY LANE GREGORY                                          APPELLANT

V.

THE STATE OF TEXAS                                              STATE

------------

FROM THE 371ST DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I. Introduction

A jury found Appellant Tony Lane Gregory guilty of capital murder and the trial court assessed punishment at life imprisonment. Appellant contends in four points that the trial court should have submitted a jury instruction on the lesser included offense of murder, that the trial court erred by overruling his motion to suppress DNA evidence, and that the trial court abused its discretion

---

[1] See Tex. R. App. P. 47.4.

by admitting evidence of an extraneous suspicious act and permitting a witness to testify about her state of mind.  We affirm.

## II.  Factual and Procedural Background[2]

Amy Blow lived at the Cornerstone Apartments in Arlington, Texas.  Amy walked to a convenience store near her apartment between noon and 2 p.m. on July 4, 2000 – it was the last time any of her friends saw her alive.

Susan Shockley lived near Amy in the Cornerstone Apartments.  Appellant also lived nearby in the same complex.  At about 9:30 or 10:00 p.m. on July 4, 2000, Appellant removed the screen to a window on Susan's enclosed patio, squatted in the dark wearing only boxer-shorts, and told Susan he wanted to get inside her apartment and needed a place to hide.  Appellant acted very aggressively and refused to leave until Susan threatened to call the police.

Connie Jenkins and Amy were close friends; they talked almost every day.  When Connie was unable to contact Amy for several days after July 3, 2000, she went to Amy's apartment to check on her.  On July 8, 2000, Connie found Amy's lifeless body on the living room couch in Amy's apartment.  Amy was fully-dressed, covered by a quilt, and positioned on the couch as if she

---

[2] Because Appellant does not contest the sufficiency of the evidence to support his conviction, we set out only so much of the evidence as required to address Appellant's points.

were sleeping. Amy had been strangled and severely beaten. She had two large lacerations on her vaginal wall that had caused significant bleeding. There was blood on Amy's bed, on the floor from the bedroom to the living room couch where Amy's body had been placed, and on the vaginal area of Amy's jeans. The medical examiner opined that the injuries to Amy's vagina occurred at or near the time of her death and that Amy died of manual strangulation more than twenty-four hours before Connie discovered her body.

The case went "cold" for several years. In December 2005, investigators obtained and executed a search warrant to obtain DNA samples from Appellant. Investigators discovered that DNA under Amy's fingernail was consistent with Appellant's and that Appellant's fingerprints were on a Coors Lite beer can that had been concealed in a laundry basket beneath bloody towels in Amy's apartment.

Appellant became very worried after investigators took the DNA samples from him, and he confessed to two fellow inmates[3] that he had severely beaten Amy. He asked one inmate to provide an alibi for him and told him Amy's body was found with a shopping bag over her face, a detail investigators had not released to the media. Appellant told the other inmate that he did not believe investigators could ever prove he had sexual intercourse with Amy.

---

[3] Appellant was incarcerated in December 2005 for an unrelated offense.

In June 2006, a grand jury indicted Appellant for capital murder. The indictment alleged Appellant intentionally caused Amy's death by strangling her in the course of committing or attempting to commit aggravated sexual assault. *See* Tex. Penal Code Ann. § 19.03(a)(2) (Vernon 2003). Appellant pleaded not guilty, and was tried in November 2007. The jury returned a verdict of guilty, and the trial court sentenced Appellant to life in prison.

### III. Jury Instruction Concerning Lesser Included Offense

In his first point, Appellant argues the trial court erred by failing to give the jury an instruction on the lesser included offense of murder. Appellant contends the jury could have interpreted the medical examiner's testimony to mean "Appellant committed the murder and then, after [Amy] was deceased, inserted an object into her corpse's vagina."

A. Standard of Review

We use a two-step analysis to determine whether an appellant was entitled to a lesser included offense instruction. *Hall v. State*, 225 S.W.3d 524, 528 (Tex. Crim. App. 2007); *Rousseau v. State*, 855 S.W.2d 666, 672–73 (Tex. Crim. App.), *cert. denied*, 510 U.S. 919 (1993). First, the lesser offense must come within article 37.09 of the code of criminal procedure. Tex. Code Crim. Proc. Ann. art. 37.09 (Vernon 2006); *Moore v. State,* 969 S.W.2d 4, 8 (Tex. Crim. App. 1998). "An offense is a lesser included offense if . . . it

4

is established by proof of the same or less than all the facts required to establish the commission of the offense charged." Tex. Code Crim. Proc. Ann. art. 37.09(1); *see also Hall*, 225 S.W.3d at 536.

Second, some evidence must exist in the record that would permit a jury to rationally find that if the appellant is guilty, he is guilty only of the lesser offense. *Hall*, 225 S.W.3d at 536; *Salinas v. State*, 163 S.W.3d 734, 741 (Tex. Crim. App. 2005); *Rousseau*, 855 S.W.2d at 672–73. The evidence must be evaluated in the context of the entire record. *Moore*, 969 S.W.2d at 8. The court may not consider whether the evidence is credible, controverted, or in conflict with other evidence. *Id.* Anything more than a scintilla of evidence may be sufficient to entitle a defendant to a lesser charge. *Hall*, 225 S.W.3d at 536.

B. Analysis

It is well-settled that murder is a lesser included offense of capital murder. *Young v. State*, 283 S.W.3d 854, 876 (Tex. Crim. App. 2009). Thus, Appellant has satisfied the first step of the lesser included offense analysis. We must therefore determine whether there is some evidence in the record that would permit a jury to rationally find that if Appellant is guilty, he is guilty only of murder. *See Hall*, 225 S.W.3d at 536.

To support his contention that the jury could have interpreted Dr. Sisler's testimony to mean Appellant murdered Amy and then inserted an object into her vagina after she was deceased, Appellant points to the following testimony from Tarrant County Deputy Medical Examiner Dr. Gary Sisler:

Q. Based on what you saw at the autopsy and especially turning your attention to what you discovered in the vaginal area or the internal vaginal area of Amy Blow, were the lacerations that were caused in her – caused in her vaginal wall, do you have an opinion as to whether or not those are fairly contemporaneous with her death?

A. How are you using the term "contemporaneous"? Would you say at or near the time of death, sir?

Q. At or near, sure.

A. Yeah, I would probably say perimortal [sic], and we use that term as at or near the time of death.

The Texas Court of Criminal Appeals addressed a similar factual scenario in *Irvan v. State*, No. AP-74853, 2006 WL 1545484 (Tex. Crim. App.) (not designated for publication), *cert. denied*, 549 U.S. 1079 (2006). Irvan was indicted for murdering the victim in the course of aggravated sexual assault and argued the evidence supported an instruction on the lesser included offense of murder because the medical examiner could not definitively state whether the sexual assault occurred before or after the murder. *Id.* at *1, *10–11. Specifically, the medical examiner testified at Irvan's trial that he could not say whether the sexual assault occurred before the murder, at the time of the

6

murder, or after the murder. *Id.* at *11. Rejecting Irvan's argument, the court stated: "The jury could not rationally acquit Irvan of capital murder and convict him only of murder merely because the medical examiner could not pinpoint the exact timing of the sexual assault." *Id.* The court then discussed other evidence showing the murder occurred during the course of the sexual assault and held Irvan "failed to satisfy the second requirement of the test." *Id.*

Appellant has similarly failed to satisfy the second step of the lesser included offense analysis. First, Dr. Sisler's testimony that Amy's vaginal lacerations were caused at or near the time of death is not evidence that her rape and murder were actually disconnected in time. *See Segundo v. State*, 270 S.W.3d 79, 91 (Tex. Crim. App. 2008), *cert. denied*, 130 S. Ct. 53 (2009) (holding medical examiner's testimony that sperm could remain in a woman's vaginal vault for up to seventy-two hours was no evidence that the victim's rape and murder were, in fact, disconnected); *see also Irvan*, 2006 WL 1545484, at *11 (rejecting lesser included murder instruction based solely on medical examiner's inability to determine exact timing of sexual assault). Appellant points to no evidence supporting his suggestion that Amy's vaginal injuries occurred after she died. "[I]t is not enough that the jury may disbelieve crucial evidence pertaining to the greater offense, but rather, there must be some evidence directly germane to the lesser-included offense for the finder of

fact to consider before an instruction on a lesser-included offense is warranted." *Hampton v. State*, 109 S.W.3d 437, 441 (Tex. Crim. App. 2003) (citing *Skinner v. State*, 956 S.W.2d 532, 543 (Tex. Crim. App. 1997), *cert. denied*, 523 U.S. 1079 (1998)). Dr. Sisler's testimony did not, without more, entitle Appellant to a jury instruction on the lesser included offense of murder, and we find no evidence in the record supporting Appellant's contention that he is guilty only of murder.

Moreover, there is ample evidence that Appellant murdered Amy in the course of sexually assaulting her. Amy suffered two lacerations on her vaginal wall, and there was concentrated blood on Amy's bed, drops of blood leading from the bedroom to the living room couch, vomit on the floor behind the couch, vomit on the bottom of Amy's feet, and a pool of blood on the vaginal area of Amy's jeans. Amy's body was found on the couch, positioned as if she were sleeping. This evidence showed that Amy was most likely sexually assaulted in the bedroom, walked or forced to walk from the bedroom to the living room (because of the blood on the floor and the vomit on the bottom of her feet), and then placed in a sleeping position on the couch. Appellant has failed to show there is some evidence in the record that would permit a jury to rationally find Appellant guilty only of the lesser included offense of murder. *See Segundo*, 270 S.W.3d at 91; *Irvan*, 2006 WL 1545484, at *11.

We overrule Appellant's first point.

IV. Motion to Suppress DNA Samples

Appellant next contends the trial court erred by denying his motion to suppress DNA samples seized from him pursuant to a 2003 search warrant. Specifically, Appellant contends that the December 2005 search warrant affidavit in this case[4] was based on a May 2003 search warrant from an unrelated case[5] and that the 2003 search warrant was not based on probable cause. According to Appellant, because the 2005 search warrant affidavit was based on the invalid 2003 search warrant, the buccal swabs taken from Appellant in December 2005 are fruit of the illegal 2003 search and seizure. The State counters that the 2005 search warrant affidavit, standing alone, establishes probable cause.

A. Applicable Law

A search warrant shall not issue in Texas unless sufficient facts are presented through a sworn affidavit to satisfy the issuing magistrate that probable cause exists for its issuance. Tex. Code Crim. Proc. Ann. art. 18.01(b) (Vernon Supp. 2009); *Jones v. State*, 833 S.W.2d 118, 123–24 (Tex. Crim. App. 1992). The facts must illustrate (1) that a specific offense

---

[4] ... Search Warrant # 14536 was issued December 20, 2005, and authorized seizure of buccal swabs from Appellant for use in the present case.

[5] ... Search Warrant # 11075 was issued May 13, 2003, and authorized seizure of buccal swabs from Appellant for use in an unrelated sexual assault case.

has been committed, (2) that the specifically described property or items that are to be searched for or seized constitute evidence of that offense or evidence that a particular person committed that offense, and (3) that the property or items constituting evidence to be searched for or seized are located at or on the particular person, place, or thing to be searched. Tex. Code Crim. Proc. Ann. art. 18.01(c). Whether the facts mentioned in an affidavit are adequate to establish probable cause depends on the "totality of circumstances." *Ramos v. State*, 934 S.W.2d 358, 362–63 (Tex. Crim. App. 1996), *cert. denied*, 520 U.S. 1198 (1997).

In assessing the sufficiency of an affidavit for an arrest or a search warrant, we are limited to the four corners of the affidavit. *Hankins v. State*, 132 S.W.3d 380, 388 (Tex. Crim. App.), *cert. denied*, 543 U.S. 944 (2004); *Jones*, 833 S.W.2d at 123. We must interpret the affidavit in a common sense and realistic manner, recognizing that the magistrate was permitted to draw reasonable inferences. *Davis v. State*, 202 S.W.3d 149, 154 (Tex. Crim. App. 2006); *Hankins*, 132 S.W.3d at 388. If the magistrate had a substantial basis for concluding that a search would uncover evidence of wrongdoing, the Fourth Amendment requires no more, and the affidavit should be deemed sufficient. *Illinois v. Gates*, 462 U.S. 213, 236, 103 S. Ct. 2317, 2331 (1983).

B. Analysis

Appellant contends the DNA samples taken from him in 2005 should have been suppressed because the 2005 search warrant affidavit was based on a 2003 search warrant that lacked probable cause. However, we need not decide whether the 2003 search warrant was based on probable cause because excluding all references to the 2003 search warrant or evidence obtained pursuant to the 2003 search warrant, the 2005 search warrant affidavit sets forth sufficient facts to establish probable cause. *See Pool v. State*, 157 S.W.3d 36, 44 (Tex. App.—Waco 2004, no pet.) (holding some of the evidence in the search warrant affidavit was illegally obtained but that the court "must put aside the illegally obtained evidence from the affidavit and evaluate the affidavit for probable cause using the remaining lawfully-acquired evidence").

Independent of any references to or evidence obtained pursuant to the 2003 search warrant,[6] the affidavit supporting the 2005 search warrant established: (1) Connie Jenkins and Samuel Cooper found Amy's body inside Amy's apartment on July 8, 2000; (2) the autopsy revealed Amy had been beaten, raped, and died from "manual strangulation;" (3) Amy had been

---

[6] ... We exclude the following facts from our analysis of the 2005 search warrant affidavit: the DNA under Amy's fingernail matched Appellant's DNA; Appellant's DNA was taken pursuant to a search warrant in 2003 in sexual assault case #01300576; Appellant threatened the victim in case #01300576 with a handgun, beat her with the butt of the handgun, causing multiple contusions and lacerations, and sexually assaulted her anally with his penis and the barrel of the gun; and Appellant was convicted and sentenced to forty years' confinement in case #01300576.

11

deceased for several days; (4) foreign male DNA was obtained from Amy's fingernail clippings, and the presence of foreign DNA was consistent with her severe beating and sexual assault; (5) the foreign male DNA matched Appellant's DNA from aggravated sexual assault case #01121548 (not the 2003 search warrant case) where Appellant threatened the victim with a knife and sexually assaulted her anally with his penis; (6) Appellant's previous arrests included kidnapping, burglary, and larceny, among others; (7) Appellant and Amy lived in the same apartment complex; (8) Appellant was not incarcerated at the time of Amy's murder; (9) Appellant's ex-girlfriend, who lived with him at the time of Amy's murder, said that Appellant had been drinking alcohol heavily, using prescription pain relievers, and running up large phone-sex bills near the time of Amy's murder and that Appellant would often disappear for several hours in the middle of the night without explanation; (10) Susan Shockley, who also lived in the same apartment complex, said that Appellant left a note on her door a month before Amy's murder indicating he had a romantic interest in Susan, that Appellant started knocking on Susan's door every day, and that she felt Appellant was stalking her; (11) Appellant climbed onto Susan's apartment patio the night of July 4, 2000, knocked on her bedroom window, crouched down on the patio to hide behind the fence, appeared very nervous and paranoid, said he needed a place to hide, and

12

refused to leave until she threatened to call the police; (12) Appellant had buccal samples on his person; and (13) Appellant was incarcerated at the time of the affidavit at the Allred prison unit in Wichita County, Texas.

Considering the totality of the circumstances, and excluding any references to or evidence obtained pursuant to the 2003 search warrant, we hold that the magistrate had a substantial basis for concluding that probable cause existed to support the issuance of the December 2005 search warrant for collection of buccal swabs. *See Gates*, 462 U.S. at 238, 103 S. Ct. at 2332. The facts in the 2005 search warrant affidavit illustrate that Amy was sexually assaulted and murdered, that Appellant's DNA constituted evidence that Appellant did or did not sexually assault and murder Amy, and that Appellant's DNA could be found on Appellant's person at a particular place. *See* Tex. Code Crim. Proc. Ann. art. 18.01(c); *see also Vafaiyan v. State*, 279 S.W.3d 374, 384 (Tex. App.—Fort Worth 2008, pet. ref'd) (holding that when considered together with the other evidence described within the four corners of the affidavits, the totality of the circumstances provided the magistrate with a substantial basis for concluding probable cause existed to search); *Goodrum v. State*, No. 01-01-00950-CR, 2003 WL 1995634, at *5 (Tex. App.—Houston [1st Dist.] May 1, 2003, pet. ref'd) (mem. op., not designated for publication) (concluding that, under the totality of the circumstances, the magistrate had

13

sufficient evidence linking appellant to the crime to issue a search warrant allowing police to draw his blood to further their investigation). Accordingly, we hold that the trial court did not abuse its discretion by denying Appellant's motion to suppress. *See Cantu v. State*, No. 05-07-01625-CR, 2009 WL 1479412, at *2 (Tex. App.—Dallas May 28, 2009, no pet.) (not designated for publication) (holding trial court did not err by denying appellant's motion to suppress after appellate court reviewed the affidavit as a whole and concluded that affidavit authorized magistrate's issuance of search warrant for collection of buccal swabs).

We overrule Appellant's second point.

## V. Admission of Evidence

Appellant's third and fourth points concern the trial court's admission of certain testimony by Susan Shockley. Appellant's third point complains about Susan's description of what Appellant deems an extraneous suspicious act, and Appellant's fourth point concerns the admission of Susan's testimony about her state of mind. After conducting a hearing outside the presence of the jury, the trial court allowed Susan to testify about Appellant's suspicious conduct the night of July 4, 2000. The trial court also permitted Susan to testify that she was upset and frightened by a note Appellant left on her door approximately one month before Amy's death.

A. Standard of Review

We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Burden v. State*, 55 S.W.3d 608, 615 (Tex. Crim. App. 2001). The test for abuse of discretion is whether the court acted without reference to any guiding rules or principles, and the mere fact that a trial court may decide a matter within its discretionary authority differently than an appellate court does not demonstrate abuse. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990). The appellate court will not reverse a trial court's ruling on the admission of evidence as long as the ruling is within the zone of reasonable disagreement. *Id.* at 391 (op. on reh'g).

B. Appellant's Suspicious Act on July 4, 2000

Susan testified that at about 9:30 or 10:00 the night of July 4, 2000, Appellant removed a windowscreen on her enclosed patio, squatted in the dark wearing only boxer-shorts, and told her he wanted to get inside her apartment and needed a place to hide. Susan said that Appellant's demeanor was "very aggressive," that he remained in a squatting position the entire time he was on her porch, and that he finally left after she threatened to call the police. Appellant objected to Susan's testimony as irrelevant and unduly prejudicial. The trial court overruled Appellant's objections and found the probative value of Susan's testimony outweighed the prejudicial effect.

1. Rule of Evidence 404(b)

Appellant first argues Susan's testimony was inadmissible because it relates to an extraneous act rendered inadmissible by rule of evidence 404(b). *See* Tex. R. Evid. 404(b). In response, the State contends the trial court did not abuse its discretion by admitting Susan's testimony because her testimony was relevant to the timing of Amy's death, Appellant's identity, and Appellant's consciousness of guilt. We agree with the State.

"Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Tex. R. Evid. 404(b). However, this evidence may be admissible when it is relevant to a "noncharacter conformity fact of consequence in the case," such as intent, motive, identity, opportunity, preparation, plan, knowledge, or absence of mistake or accident. *Powell v. State*, 63 S.W.3d 435, 438 (Tex. Crim. App. 2001); *see* Tex. R. Evid. 404(b). Further, evidence of flight is "admissible as a circumstance from which an inference of guilt may be drawn." *Alba v. State*, 905 S.W.2d 581, 586 (Tex. Crim. App. 1995), *cert. denied*, 516 U.S. 1077 (1996). Susan's testimony tended to prove Appellant was in the vicinity of Amy's apartment and was looking for a place to hide near the time of Amy's murder. *See Sosa v. State*, 177 S.W.3d 227, 230 (Tex. App.—Houston [1st Dist.] 2005, no pet.) (recognizing that neither an accused's presence at, nor

16

flight from, the scene of a crime is sufficient alone to support a guilty verdict, but that both are circumstances from which an inference of guilt may be drawn). Her testimony was also probative of Appellant's identity.[7] *See Rodriguez v. State*, No. 05-02-01272-CR, 2003 WL 22966671, at *6 (Tex. App.—Dallas Dec. 18, 2003, pet. ref'd) (mem. op., not designated for publication) (op. on reh'g) (holding trial court did not err by admitting evidence of extraneous aggravated robbery during defendant's flight from murder because evidence was relevant to identity). Because Susan's testimony was relevant apart from Appellant's conformity with character, the trial court did not err in finding the testimony admissible under rule 404(b). *See* Tex. R. Evid. 404(b); *Alba*, 905 S.W.2d at 586.

2. Rule of Evidence 403

Appellant also objected to Susan's testimony under rule of evidence 403. Evidence that is relevant may nevertheless be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, or needless presentation of cumulative evidence. Tex. R. Evid. 403. Only "unfair" prejudice provides the basis for exclusion of relevant evidence. *Montgomery,* 810 S.W.2d at 389. Unfair prejudice arises

---

[7] Appellant's identity was clearly at issue at trial. For example, Appellant's counsel extensively cross-examined an investigating detective concerning the investigator's efforts to rule out suspects other than Appellant.

from evidence that has an undue tendency to suggest that a decision be made on an improper basis, commonly an emotional one. *Id.*

When a defendant makes a rule 403 objection, the trial court has a nondiscretionary obligation to weigh the probative value of the evidence against the unfair prejudice of its admission. *Id.* In overruling such an objection, the trial court is assumed to have applied a rule 403 balancing test and determined the evidence was admissible. *See Poole v. State*, 974 S.W.2d 892, 897 (Tex. App.—Austin 1998, pet. ref'd); *Yates v. State*, 941 S.W.2d 357, 367 (Tex. App.—Waco 1997, pet. ref'd); *Caballero v. State*, 919 S.W.2d 919, 922 (Tex. App.—Houston [14th Dist.] 1996, pet. ref'd). A reviewing court must recognize that the trial court is in a superior position to gauge the impact of the relevant evidence and not reverse a trial court's ruling if it is within the "zone of reasonable disagreement." *Mozon v. State,* 991 S.W.2d 841, 847 (Tex. Crim. App. 1999); *Montgomery*, 810 S.W.2d at 391.

In considering whether the trial court should have excluded Susan's testimony under rule 403, we measure the trial court's balancing-test determination against the following criteria: (1) how compellingly the extraneous offense evidence serves to make a fact of consequence more or less probable—a factor which is related to the strength of the evidence presented by the proponent to show the defendant in fact committed the extraneous

18

offense; (2) the potential the other offense evidence has to impress the jury "in some irrational but nevertheless indelible way"; (3) the time the proponent will need to develop the evidence, during which the jury will be distracted from consideration of the indicted offense; and (4) the force of the proponent's need for this evidence to prove a fact of consequence, that is, does the proponent have other probative evidence available to him to help establish this fact, and is this fact related to an issue in dispute. *Mozon,* 991 S.W.2d at 847. When the relevant criteria objectively lead to the conclusion that the danger of unfair prejudice substantially outweighs the probative value of the proffered evidence, the appellate court should declare that the trial court erred by failing to exclude it. *Curtis v. State*, 89 S.W.3d 163, 170 (Tex. App.—Fort Worth 2002, pet. ref'd) (citing *Montgomery*, 810 S.W.2d at 392).

In this case, each of the four factors favors admissibility. First, Susan's testimony makes it more likely that Appellant murdered Amy the evening of July 4, 2000. The medical examiner testified Amy died at least twenty-four hours before her body was discovered on July 8, 2000, and that she could have died within a wide range of time before then. Further, investigators testified there was a great deal of blood throughout Amy's apartment. Appellant's presence, demeanor, and behavior on Susan's enclosed patio the evening of July 4, 2000, wearing only boxer-shorts and looking for a place to

19

hide are compellingly probative of his involvement in Amy's murder, particularly because the identity of Amy's killer was disputed at trial. The evidence helped explain the possibility that Appellant killed Amy, discarded his bloody clothes, and looked for a place to hide in Susan's apartment.

In addition, Susan's testimony concerning Appellant's act of accessing her enclosed patio is not particularly emotional or otherwise likely to inflame the jury. And her testimony did not detract from the jury's consideration of the indicted offense because the State offered her testimony as part of its proof that Appellant committed the indicted offense. Finally, Susan was the only witness to Appellant's act, and it does not appear the State had ready-access to other evidence to show Appellant's behavior and presence near the time of the murder. The trial court did not abuse its discretion by finding the probative value of Susan's testimony was not substantially outweighed by any prejudicial effect.

We overrule Appellant's third point.

## C. Susan's State of Mind Testimony

Susan also testified she first became aware of Appellant after he left a note on her door in early June 2000. She said that after reading the note, she was upset because the note frightened her. Appellant asserted a general relevance objection to the question that asked Susan what she "gather[ed] from

the note after [she] read it," and the State argued the testimony concerned Susan's state of mind. The trial court overruled Appellant's objection. Assuming without deciding the trial court erred by overruling Appellant's objection to Susan's state of mind testimony, the error, if any, was harmless.

Appellant concedes that the admission of Susan's testimony does not involve constitutional error. Rule of appellate procedure 44.2(b) therefore applies. *See* Tex. R. App. P. 44.2(b). Under rule 44.2(b), we must disregard the error if it did not affect Appellant's substantial rights. *Id.*; *see Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (op. on reh'g), *cert. denied*, 526 U.S. 1070 (1999); *Coggeshall v. State*, 961 S.W.2d 639, 642–43 (Tex. App.—Fort Worth 1998, pet. ref'd). A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946)); *Coggeshall*, 961 S.W.2d at 643. Conversely, an error does not affect a substantial right if we have "fair assurance that the error did not influence the jury, or had but a slight effect." *Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001); *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).

Under the circumstances, we have fair assurance that the admission of Susan's testimony that she was upset because the note frightened her did not influence the jury or had but a slight effect. In addition to Susan's state of mind testimony, the State presented evidence that Appellant watched Amy and Susan from the bushes at the pool; that Amy did not want to converse with Appellant at the apartment pool; that Amy was last seen alive the afternoon of July 4, 2000; that around 9:30 or 10:00 p.m. on July 4, 2000, Appellant squatted on Susan's patio in the dark wearing only boxer-shorts and told Susan he wanted to get inside her apartment and needed a place to hide; that Appellant's fingerprints were on a Coors Lite beer can that was concealed beneath bloody towels in a laundry hamper inside Amy's apartment; that the mixture of DNA under Amy's fingernail was consistent with Amy's and Appellant's; that Appellant became very worried after detectives took a DNA sample from him; that Appellant asked a fellow inmate to provide an alibi for him; that Appellant told fellow inmates Amy scratched him on his nose, he severely beat Amy, he did not believe investigators could ever prove he had sexual intercourse with Amy, and Amy's body was found with a shopping bag over her head, a detail the investigators did not release to the media.

Susan's state of mind testimony was insignificant in the context of the entire case against Appellant. We do not see how its admission in evidence

22

substantially or injuriously affected or influenced the jury in reaching its verdict.

We therefore hold that the trial court's error, if any, in admitting Susan's testimony was harmless.  *See* Tex. R. App. P. 44.2(b).

We overrule Appellant's fourth point.

VI.  Conclusion

Having overruled each of Appellant's four points, we affirm the trial court's judgment.

ANNE GARDNER
JUSTICE

PANEL:  GARDNER, WALKER, and MCCOY, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  January 28, 2010